Richard T. BUCK, et al., Plaintiffs,
v.
VILLAGE OF MINOOKA, et al., Defendants.

No. 82 C 3843.

United States District Court,
N.D. Illinois, E.D.

Nov. 15, 1982.

Alan O. Amos, Collins & Amos, Chicago, Ill., for plaintiffs.

Timothy Malmquist, Malmquist & Malmquist, Morris, Ill., for defendants.

## MEMORANDUM OPINION AND ORDER

SHADUR, District Judge.

Three individual Illinois land trust beneficiaries[1] and the bank trustee of that trust bring a 42 U.S.C. § 1983 ("Section 1983") action against the Village of Minooka ("Minooka") and its Village Trustees ("Trustees") in their official and individual capacities. Plaintiffs claim defendants diminished the value of the land trust property (the "Property") without due process of law, by refusing to reserve two liquor licenses for the Property as required by an agreement between Minooka and plaintiffs' predecessors in ownership. Defendants have moved for summary judgment[2] and for dismissal of Trustee Keith Steffes. For the reasons stated in this memorandum opinion and order, this Court sua sponte dismisses this action for failure to state a Section 1983 cause of action.

### Facts[3]

On July 15, 1974 Minooka and Donald Jennings ("Jennings") entered into a Pre-Annexation Agreement (the "Agreement"), pursuant to which the Property was annexed to Minooka. Paragraph 4 of the Agreement[4] provides:

> The Owner and the Village of Minooka agree that the Village will reserve or pass all necessary ordinances or resolutions to allow the issuance of 2 liquor licenses for use on said annexed land when and if the Owner requests the issuance of said licenses for a use listed in Exhibit "A", provided that one such license shall be for use in a cocktail lounge connected with a restaurant. The other license shall be for a package liquor store.

Paragraph 8 states:

> This agreement shall be binding upon the Owner, his heirs, executors and assigns and the Village of Minooka for 10 years as provided by Illinois Revised Statutes.

Plaintiffs later purchased the Property from Jennings, relying on the provisions of the Agreement.

On November 17, 1975 Minooka enacted an ordinance that effectively prohibited the issuance (to anyone) of either type of liquor license referred to in Paragraph 4.[5] Plain-

---

1. This reference to a land trust represents an assumption from the allegations of Complaint ¶ 2, which implies but does not state the nature of the trust. If the assumption is incorrect, the beneficiaries (in accordance with the conventional law of express trusts) would have no standing to enforce such rights as the trust may have.

2. Defendants actually ask for both summary judgment and judgment on the pleadings. Of course the latter request necessarily poses the same legal issues as, and would be subsumed within, the former if defendants were successful.

3. Although this Court has not granted defendants' summary judgment motion, all reasonable factual inferences have been drawn in favor of the parties opposing such relief (here plaintiffs). That treatment is equally appropriate to the disposition made by this Court.

4. All subsequent references to "Paragraph" in this opinion are to the Agreement.

5. Specifically the 1975 ordinance (1) bars issuance of any additional Class A licenses (which covers restaurant-cocktail lounges) until Minooka's population reaches 2,000 and (2) limits the number of Class B licenses (covering

tiffs have repeatedly asked Minooka to pass a resolution implementing Paragraph 4. At the August 10, 1981 Village Board meeting:

> The motion was made to have our attorney draw up a resolution to coincide with the Donald Jennings Pre-Annexation Agreement regarding Paragraph 4 granting the owners the issuance of a liquor license. This resolution would be good until 1984 when the pre-annexation agreement would run its 10 year term.[6]

That motion was defeated.

Minooka's refusal to reserve any liquor licenses for the Property has, plaintiffs claim, appreciably reduced its value. Convinced that Minooka had repudiated the Agreement, plaintiffs brought this action.

### Plaintiffs' Flawed Section 1983 Claim

Minooka advances several theories for summary judgment:

1. Paragraphs 4 and 8, read together, are unenforceable because a municipality such as Minooka cannot bind itself to grant a liquor license for more than one year.

2. Plaintiffs failed to satisfy two conditions precedent to Minooka's performance of its obligations under Paragraph 4:

    (a) They have not requested issuance of the liquor licenses.

    (b) They have not constructed the cocktail lounge and package liquor store contemplated by Paragraph 4.

3. Paragraph 4 did not require *immediate* reservation of the two liquor licenses, so that Minooka did not dishonor the Agreement by enacting the November 17, 1975 ordinance and rejecting the August 10, 1981 motion.

All three contentions make plain that this action, though framed in Section 1983 terms, is at bottom a suit for breach of contract. Indeed that is the obvious thrust of the Complaint from even the most casual reading.

package liquor stores) to one for each 1,000 Minooka residents. Minooka's population is now 1,565, and one Class B license has already been issued. Thus the ordinance blocks plaintiffs in each category.

Yet neither party has seen fit to address the most obvious problem in the case: whether a claim for the deprivation of property without due process of law may be grounded in a municipality's (or state's or other state governmental entity's) simple refusal to perform a contract. If it could, the federal courts would become the dumping ground for an enormous volume of litigation that intuition tells us cannot have been within the intended scope of the Civil Rights Act.

■ What both parties have missed in that regard is the entire conceptual and structural underpinning of Section 1983. It requires both state action *and* the violation of a federal right. In the latter respect plaintiffs can and do point only to the Due Process Clause of the Fourteenth Amendment.

■ But it is no accident that the constitutional provision is labeled the Due *Process* Clause. Its focus is not on the deprivation of property alone, but only such deprivation "without due process of law." Surely it was never intended to create, via Section 1983, a font of contract law governing ordinary contractual breaches by the state. *Cf. Paul v. Davis,* 424 U.S. 693, 701, 96 S.Ct. 1155, 1160, 47 L.Ed.2d 405 (1976) (expressing just those sentiments in the tort context).

■ For present purposes the teachings of *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981) in the tort law field are equally compelling here. Just as the availability of a post-deprivation state tort remedy satisfied the dictates of procedural due process in *Parratt,* so plaintiffs' right to sue for breach of contract in the state court system comports with the Fourteenth Amendment here.

■ Indeed that conclusion seems to follow a fortiori from the Supreme Court

**6.** This language is taken from Trustees' official minutes.

decisions in the tort area. There is nothing this Court can do for plaintiffs that is not probably better available in the state court system [7]—save perhaps for the availability of attorneys' fees, and perhaps punitive damages, under Section 1983 but not in a state contract action. And such differences in possible remedy do not support the enormous extension of Section 1983 exemplified by plaintiffs' garden variety breach of contract action.[8]

■ In short, plaintiffs' Complaint asserts a property deprivation without alleging any lack of due process. And as *Parratt* emphasized, that assertion alone does not implicate the Due Process Clause (451 U.S. at 537, 101 S.Ct. at 1913):

> Nothing in that Amendment protects against all deprivations of life, liberty, or property by the State. The Fourteenth Amendment protects only against deprivations "without due process of law."

#### Conclusion

Plaintiffs' Complaint is dismissed for failure to state a claim under Section 1983. This dismissal is of course without prejudice to their bringing the same claim where it should have been brought in the first place—in the Illinois state courts.

---

7. Most of the state law issues posed by the Complaint and defendants' summary judgment motion are in areas particularly a function of local law, with which the state courts deal regularly: municipal corporations and liquor licensing, for example.

8. Such differences do not establish *inadequacy* of state remedies under due process standards. And that is the only inquiry this Court need undertake, as *Parratt* also teaches (451 U.S. at 544, 101 S.Ct. at 1917). Indeed the addition of a possible punitive damage component would be even more anomalous in a breach of contract action than in a tort action.