**A. AIUDI & SONS, et al., Plaintiffs,**

**v.**

**TOWN OF PLAINVILLE, Defendants.**

**Civ. No. 3:93–2468(AHN).**

United States District Court,
D. Connecticut.

Sept. 1, 1994.

Carl R. Ficks, Jr., Robert A. Michalik, Eisenberg, Anderson, Michalik & Lynch, New Britain, CT, for defendant.

NEVAS, District Judge.

After review and over objection, the Magistrate Judge's Recommended Ruling is approved, adopted and ratified. SO ORDERED.

### MAGISTRATE JUDGE'S OPINION

SMITH, United States Magistrate Judge.

Plaintiffs brought the present action against the Town of Plainville in a thirteen-count complaint. Federal jurisdiction is purportedly founded on one count under 42 U.S.C. § 1983; the remaining twelve counts are pendent state law claims sounding, for the most part, in contract. Now pending before the court is defendant's motion to dismiss the complaint pursuant to Fed. R.Civ.P. 12(b)(1) and 12(b)(6).

## I. STANDARD

In assessing a motion to dismiss under Fed.R.Civ.P. 12(b)(6), a court must determine whether the plaintiff, under any possible theory, has a valid claim upon which relief can be granted. *Steiner v. Shawmut Nat'l Corp.*, 766 F.Supp. 1236, 1241 (D.Conn. 1991). " '[A] complaint should not be dismissed for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief.' " *Presnick v. Santoro*, 832 F.Supp. 521, 525 (D.Conn. 1993) (quoting *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–102, 2 L.Ed.2d 80 (1957)). The facts alleged in the complaint should be taken as true and any inferences from the plaintiff's allegations should be drawn in the light most favorable to the plaintiff. *Id.* at 524–25. These standards are applied with particular care when, as in this case, a plaintiff complains of a civil rights violation. *Sheppard v. Beerman*, 18 F.3d 147, 150 (2d Cir.1994).

Linda L. Morkan, Eric Lukingbeal, John Wenning Steinmetz, Robinson & Cole, Hartford, CT, for plaintiff.

## II. FACTS

On or about April 1, 1989, plaintiffs entered into a purchase and sale agreement

with Costos Jones for the purchase of a forty-acre parcel of land in Plainville, Connecticut. Prior to signing the purchase agreement, Jones had applied for and received conditional approval for a residential subdivision of the land, which was to consist of nineteen building lots and 120 condominiums. Pursuant to the regulations of the Plainville Planning and Zoning Commission and Conn.Gen.Stat. § 8–25, the defendant conditioned the subdivision approval on the posting of security. The purpose of the security was to ensure the construction and installation of certain public improvements on the land and thereby protect the defendant from claims by future subdivision owners.

On or about June 6, 1989, plaintiff Elmo Aiudi, general partner of A. Auidi & Sons, signed a "Performance Bond for Use with Letter of Credit" ("Bond") for delivery to defendant. The Bond obligated A. Aiudi & Sons to complete the construction and installation of the required public improvements. Pursuant to the terms of the Bond, plaintiffs arranged for the issuance of an irrevocable letter of credit by Burritt Interfinancial Bancorporation ("Burritt"), in the amount of $607,709.00, naming the Town of Plainville as beneficiary.

Although the closing for the sale of the land was set to take place on October 1, 1989, plaintiffs did not obtain title to the land, and the improvements contemplated in the Bond were never made. A. Auidi & Sons was sued for specific performance and money damages for its failure to close on the purchase and sale agreement; this suit was resolved by a stipulated judgment in August, 1993. At some point following the entry of the judgment, A. Aiudi & Sons delivered to the defendant a restrictive covenant signed by Jones assuring the defendant that no lots from the subdivision would be sold until all public improvements were completed or new security was posted.

On or about April 26, 1991, in the absence of compliance with the terms of the Bond respecting the construction of the public improvements, the defendant made demand on Burritt for full payment under the letter of

credit, and Burritt honored the demand. On or about October 21, 1992, Burritt commenced an action against the plaintiffs seeking indemnification for the payment made to the defendant under the letter of credit.[1]

Plaintiffs allege that, despite repeated demands for the return of the letter-of-credit funds and assurances that no lots would be sold until all required public improvements were completed or new security was posted, the defendant has refused to return the funds to A. Aiudi & Sons. Plaintiffs commenced this action on December 14, 1993, alleging, *inter alia,* that the defendant's actions in both calling the letter of credit and continuing refusal to release the funds violate 42 U.S.C. § 1983 in that the defendant, acting under color of state law, deprived plaintiffs of their rights to both substantive and procedural due process under the Fourteenth Amendment.

## III. DISCUSSION

■ The analysis begins with the acknowledgment that "[s]ection 1983 'is not itself a source of substantive rights,' but merely provides 'a method for vindicating federal rights elsewhere conferred.' " *Albright v. Oliver,* — U.S. —, —, 114 S.Ct. 807, 811, 127 L.Ed.2d 114 (1994) (quoting *Baker v. McCollan,* 443 U.S. 137, 144 n. 3, 99 S.Ct. 2689, 2695, 61 L.Ed.2d 433 (1979)). To state a claim under 42 U.S.C. § 1983, a complaint must allege that the defendant, acting under color of state law, deprived the plaintiffs of a right secured by the Constitution or laws of the United States. *Gomez v. Toledo,* 446 U.S. 635, 638, 640, 100 S.Ct. 1920, 1923, 64 L.Ed.2d 572 (1980); *Costello v. Town of Fairfield,* 811 F.2d 782, 784 (2d Cir.1987). "The first step in any such claim is to identify the specific constitutional right allegedly infringed." *Albright,* — U.S. at —, 114 S.Ct. at 811. Where, as in this case, a violation of the Fourteenth Amendment is alleged, the plaintiffs must establish that a deprivation of a constitutionally protected interest occurred without due process of law.

1. The Federal Deposit Insurance Corporation was appointed receiver for Burritt in December, 1992, and subsequently was substituted as the plaintiff in the action against A. Auidi & Sons.

*Costello,* 811 F.2d at 784 (citing *Gendalia v. Gioffre,* 606 F.Supp. 363, 366 (S.D.N.Y.1985)).

## A. Property Interest

 The range of interests protected by the Due Process Clause of the Fourteenth Amendment is not boundless. *See Board of Regents v. Roth,* 408 U.S. 564, 572, 92 S.Ct. 2701, 2706, 33 L.Ed.2d 548 (1972). In order to state a due process claim the plaintiffs "must show that the interests of whose deprivation he complains are substantial enough to invoke the protection of federal law and the federal courts." *Waltentas v. Lipper,* 636 F.Supp. 331, 334 (S.D.N.Y.1986). The interests claimed will not flow "from the Constitution itself, but from 'existing rules or understandings that stem from an independent source such as state law.'" *Kelly Kare, Ltd. v. O'Rourke,* 930 F.2d 170, 175 (2d Cir.) (quoting *Roth,* 408 U.S. at 577, 92 S.Ct. at 2709), *cert. denied,* —— U.S. ——, 112 S.Ct. 300, 116 L.Ed.2d 244 (1991); *see also West Farms Assocs. v. State Traffic Comm'n,* 951 F.2d 469, 472 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 1671, 118 L.Ed.2d 391 (1992). While such an independent source may be a contract with the state, *see, e.g., Perry v. Sindermann,* 408 U.S. 593, 92 S.Ct. 2694, 33 L.Ed.2d 570 (1972); *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 965 (2d Cir.1988), it is clear that the circumstances in which a contract will give rise to a constitutionally protected interest are drastically limited.

In *Goldin* the Second Circuit observed that the concept of property in the Due Process Clause has expanded "to include rights to some governmental benefits conferred by statute or by contract." 844 F.2d at 965 (citing *Goldberg v. Kelly,* 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970); *Sindermann, supra*). The court noted, however, "that all interests warranting procedural protection as property rights require something in addition to their importance to the claimant." *Id.* In a case raising similar concerns regarding contract interests and the Due Process Clause, the Seventh Circuit observed that:

> In deciding whether a particular breach should be deemed a deprivation of proper-

ty [a court] must bear in mind that the Fourteenth Amendment was not intended to shift the whole of the public law of the states into the federal courts. Most common law wrongs are not actionable under section 1983, though by definition they involve the deprivation of a legally protected interest. Only interests substantial enough to warrant the protection of federal law and federal courts are Fourteenth Amendment property interests. Whether an interest is that substantial depends on the security with which it is held under state law and its importance to the holder.

*Brown v. Brienen,* 722 F.2d 360, 364 (7th Cir.1983) (citations omitted); *see also Jimenez v. Almodovar,* 650 F.2d 363, 370 (1st Cir.1981) (stating that a "mere breach of contractual right is not a deprivation of property without due process.... Otherwise, virtually every controversy involving an alleged breach of contract by a government or governmental institution ... would be a constitutional case."). The danger of expanding section 1983 liability to include the breach of non-employment contracts is echoed in the opinions of the Second Circuit. In *Waltentas v. Lipper,* for example, the court noted that the Supreme Court

> has carefully limited the rule to situations which involve contracts with tenure provisions and the like, or where a clearly implied promise of continued employment has been made. Courts have accordingly been wary of the consequences that might arise if section 1983 were expanded to encompass substantially all public contract rights.

862 F.2d 414, 418 (2d Cir.1988) (citations omitted); *see also Goldin,* 844 F.2d at 967 (holding "[t]hus far, the course of the law in this Circuit has not moved beyond according procedural due process protection to interests other than those well within the contexts illustrated by *Goldberg* and *Roth* ").

Having recognized the need for something more than the assertion of an interest, *Goldin* identified the controlling analysis as an inquiry into the issue of whether the plaintiffs have "a contractual right giving rise to a 'legitimate claim of entitlement' and thus a constitutionally protected property interest

under *Roth.*" *Id.* at 966. Plaintiffs claim that they have a concrete property interest in the actual funds that Burritt disbursed pursuant to the Letter of Credit. (*See* Pl.s' Mem. in Opp'n, Filing 12, at 9–11). Because of this, they argue, "it is not necessary to delve into the 'entitlement' analysis set forth in *Roth,* because the property interest at issue here is in the 'actual ownership of real estate, chattels or money.'" (*Id.* at 12). While true that the language of *Roth* speaks in terms of "benefits," *see* 408 U.S. at 577, 92 S.Ct. at 2709, the entitlement scheme of that case does control the analysis here. *See Goldin,* 844 F.2d at 966. *Roth* held that "[t]o have a property interest in a benefit, a person clearly must have more than an abstract need or desire for it. He must have more than a unilateral expectation of it. He must, instead, have a legitimate claim of entitlement to it." 408 U.S. at 577, 92 S.Ct. at 2709. The interests of the plaintiffs in this case do not rise to such a level.

■ Plaintiffs, understandably in light of the attendant liability, focus on their purported entitlement to the letter-of-credit funds; in doing so, however, they fail to see that their claim against the town is entirely dependent on the resolution of the issue of whether the defendant breached its obligations under the contract. *See Christ Gatzonis Elec. Contractor, Inc. v. New York City Sch. Constr. Auth.,* 23 F.3d 636, 641 (2d Cir.1994) (holding that doubt surrounding amount of funds owed by municipality to contractor precluded assertion of clear entitlement); *see also Waltentas v. Lipper,* 862 F.2d 414, 419 (2d Cir.1988) (noting that the conditional nature of the asserted interest defeated claim of entitlement). Plaintiffs

have never had a right to the funds that were disbursed by Burritt. Rather, at all relevant times the plaintiffs had only a right to performance of the underlying contract or damages for nonperformance.[2]

The plaintiffs in this case have pointed to no source other than the contract underlying the Bond as a basis for their interest in the letter-of-credit funds held by the defendant. As the underlying contract is not purported to confer benefits which could be considered to relate to plaintiffs' "status," *Goldin,* 844 F.2d at 966, the interests stemming from the relationship do not amount to constitutionally protected property interests. *See id.* at 967 (noting that "the course of the law in this Circuit has not moved beyond according procedural due process protection to interests other than those well within the contexts illustrated by *Goldberg* and *Roth* ").

■ Plaintiffs claim that performance under the Bond was conditioned on the expected transfer of ownership of the parcel of land. Defendant claims that the Bond was intended to protect the Town of Plainville in the event the plaintiffs did not perform the subdivision improvements after the Town of Plainville had approved the residential subdivision. The dispute between the parties, therefore, focuses on the propriety of the defendant's calling the letter of credit. At bottom, plaintiffs' claims against the town are for breach of contract and not for a deprivation of rights secured by the United States Constitution, and a "contract dispute ... does not give rise to a cause of action under section 1983." *Costello,* 811 F.2d at 784. *See also Goldin,* 844 F.2d at 966; *Boston Envtl. Sanitation Inspectors Ass'n v. City of Bos-*

2. The disjunctive nature of this right entails that, unless the state refuses to pay damages for breaching the contract, plaintiffs have not been deprived of any interest. *See Vail v. Board of Educ.,* 706 F.2d 1435, 1452–53 (7th Cir.1983) (Posner, J., dissenting). This logic is borne out by examining the case had A. Auidi & Sons completed the public improvements on the subdivision. In that situation defendant would not have called the bond; Burritt would not have honored the call; and plaintiffs would not be entitled to any of the funds in dispute in this case. Even if in that case the defendant called the bond, however, there would be no entitlement to the funds but only an entitlement to

damages. A basis for this analogy is found in cases where a plaintiff's interest in obtaining a permit or license has been found to be a protected property interest. In these cases, "[t]he question of whether an applicant has a legitimate claim of entitlement to the issuance of a license ... depend[s] on whether, absent the alleged denial of due process, there is either a certainty or a very strong likelihood that the application would have been granted." *Yale Auto Parts, Inc. v. Johnson,* 758 F.2d 54, 59 (2d Cir.1985). Here, absent the alleged deprivation the plaintiffs would have no claim to the tangible funds disbursed by Burritt.

*ton,* 794 F.2d 12, 13 (1st Cir.1986); *Coastland Corp. v. County of Currituck,* 734 F.2d 175, 178 (4th Cir.1984); *Brown,* 722 F.2d at 364; *Braden v. Texas A & M Univ. Sys.,* 636 F.2d 90, 93 (5th Cir.1981). Plaintiffs will not be allowed to wag their dog through the doors of federal court with a § 1983 tail.

**B. Due Process**

■ Even if the plaintiffs' interests amounted to interests protected by the Due Process Clause and assuming that there was a deprivation of these interests,[3] there has been no denial of due process in this case. Where state law supports an interest warranting protection by the Due Process Clause, "that benefit cannot be stripped without procedural due process; and federal law determines what process is due." *Kelly Kare,* 930 F.2d at 175.

Since there has been no allegation that plaintiffs cannot be made whole through a damages action against the town,[4] their claims of lack of due process relate only to the issue of whether the plaintiffs were entitled to some additional remedy *prior* to both the decision to call the letter of credit and the decision to refuse to release the funds after presented with assurances that no lots on the subdivision would be sold.

■ In *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986), the Court noted that, in most cases where a predeprivation hearing was found to be required process, the deprivation "was pursuant to some established state procedure and 'process' could be offered before any actual deprivation took place." *Id.* at 537, 101 S.Ct. at 1913. In breach of contract cases it is difficult to see how the decision complained of, i.e. the determination to engage in behavior that is later

challenged as constituting a breach, can ever be said to be based on "some established state procedure." Even if the official nature of the decision by a body to breach a contract renders it analogous to an established procedure, "either the necessity of quick action by the State or the impracticality of providing any meaningful predeprivation process, when coupled with the availability of some meaningful means by which to assess the propriety of the State's action at some time after the initial taking, can satisfy the requirements of procedural due process." *Id.* at 539, 101 S.Ct. at 1914. *See also Mitchell v. W.T. Grant Co.,* 416 U.S. 600, 611, 94 S.Ct. 1895, 1902, 40 L.Ed.2d 406 (1974) (" '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate' ").

■ Plaintiffs in this case have not alleged that the State of Connecticut does not afford them a remedy for the alleged breach of contract. In these circumstances the court can discern no basis why the reasoning of *Parratt* should not control. *See Buck v. Village of Minooka,* 552 F.Supp. 298 (N.D.Ill. 1982). A contrary conclusion would result in the somewhat puzzling holding that, before engaging in behavior that *may* later be judicially determined to constitute a breach, the state must hold some kind of hearing to determine whether the proposed behavior is a breach. "[N]o matter how significant the private interest at stake and the risk of its erroneous deprivation, the State cannot be required to do the impossible by providing predeprivation process." *Zinermon v. Burch,* 494 U.S. 113, 129, 110 S.Ct. 975, 985, 108 L.Ed.2d 100 (1990) (citation omitted).

**C. Substantive Due Process**

■ The same factual bases for plaintiffs' procedural due process claim, both the call-

---

3. *See Brown,* 722 F.2d at 366 ("since the plaintiffs' loss was of a kind readily compensable in monetary terms, it may even be doubted whether any deprivation in the constitutional sense has yet occurred, or will occur unless and until the state courts turn down a meritorious contract claim").

4. Although plaintiffs may not receive all of the relief that they may have been entitled to under § 1983, the remedies provided for the contract claims in the complaint can fully compensate plaintiffs. *See Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), *overruled on other grounds by Daniels v. Williams,* 474 U.S. 327, 106 S.Ct. 662, 88 L.Ed.2d 662 (1986).

ing of the letter of credit and the continuing refusal to turn the funds over to A. Auidi & Sons, are alleged in the complaint to state a claim for a deprivation of substantive due process. "[T]he Due Process Clause of the Fourteenth Amendment confers both substantive and procedural rights." *Albright v. Oliver,* —— U.S. ——, ——, 114 S.Ct. 807, 812, 127 L.Ed.2d 114 (1994). The former "protects the individual against certain government actions 'regardless of the fairness of the procedures used to implement them.'" *McClary v. O'Hare,* 786 F.2d 83, 88 (2d Cir.1986) (quoting *Daniels v. Williams,* 474 U.S. 327, 331, 106 S.Ct. 662, 665, 88 L.Ed.2d 662 (1986)). It guards against "government action that is arbitrary, conscience-shocking, or oppressive in a constitutional sense, but not against government action that is 'incorrect or ill-advised.'" *Lowrance v. Achtyl,* 20 F.3d 529, 537 (2d Cir.1994) (citations omitted). The Supreme Court recently observed that it

"has always been reluctant to expand the concept of substantive due process because the guideposts for responsible decision-making in this unchartered area are scarce and open-ended." The protections of substantive due process have for the most part been accorded to matters relating to marriage, family, procreation, and the right to bodily integrity.

*Albright,* —— U.S. at ——, 114 S.Ct. at 812 (quoting *Collins v. City of Harker Heights,* 503 U.S. ——, ——, 112 S.Ct. 1061, 1068, 117 L.Ed.2d 261 (1992)).

In substantive due process cases the "first step ... is to identify the constitutional right at stake." *Lowrance,* 20 F.3d at 37. Plaintiffs refer to no right secured by the Constitution or federal laws other than the Due Process Clause of the Fourteenth Amendment *simpliciter.* In this sense, plaintiffs' claims can be reduced to the assertion that their substantive due process rights have been denied because their procedural due process rights were denied. In fact, the substantive due process claims mirror the procedural claims, and the adverse implications of holding that the characterization of the claim as a violation of substantive due process renders it materially different in a

constitutional sense counsel hesitancy in accepting plaintiffs' argument. *See Schaper v. City of Hunstville,* 813 F.2d 709, 718 (5th Cir.1987) (noting that allowing such a claim "would effectively eviscerate the holding of *Parratt* ").

Plaintiffs confine their substantive due process claim to the allegation that the defendant's actions were unconstitutional because they were arbitrary. In characterizing the defendant's actions as arbitrary, the plaintiffs seek refuge in one of the most fundamental and revered shelters constructed by the Due Process Clause. *See, e.g., Wolff v. McDonnell,* 418 U.S. 539, 558, 94 S.Ct. 2963, 2975, 41 L.Ed.2d 935 (1974) (calling the protection of the individual from arbitrary action of government the "touchstone" of due process). Plaintiffs, however, may not present their claim in a temporal vacuum.

Plaintiffs do not challenge the constitutionality of the defendant's authority to require the posting of a bond as a prerequisite to granting approval of a subdivision plan. It is clear that under the Bond the defendant had the authority to call the letter of credit. In agreeing to a contract that explicitly contemplated the possibility of this event, the plaintiffs cannot now complain that the occurrence of the event was arbitrary. *Cf. Lowrance,* 20 F.3d at 537 (holding that confinement of prisoner who created the event giving rise to alleged constitutional violation was not "arbitrary or conscience-shocking in the constitutional sense").

Moreover, when a state instrumentality acts pursuant to the terms of a contract, its behavior is far from the kind of oppressive conduct which the Fourteenth Amendment was designed to guard against. In this light, the court agrees with the holding of *North Star Contracting Corp. v. Long Island R.R.* that a substantive due process right is not implicated when "the only tie the government has to the case is the fact that it is one of the parties." 723 F.Supp. 902, 911 (E.D.N.Y.1989) (quoting *McClary,* 786 F.2d at 88); *see Daniels,* 474 U.S. at 332, 106 S.Ct. at 665 ("Our Constitution deals with the large concerns of the governors and the governed, but it does not purport to supplant traditional tort law in laying down rules of

conduct to regulate liability for injuries that attend living together in society").

## IV. CONCLUSION

For the reasons stated above, defendant's motion to dismiss plaintiffs' section 1983 claim (**filing 7**) should be **GRANTED.** Since the sole claim arising under federal law has been dismissed, the basis upon which subject-matter jurisdiction rests has been obliterated. The remaining counts in the complaint therefore should be **DISMISSED** without prejudice to their pursuit in state court. 28 U.S.C. § 1367(c); *see United Mine Workers v. Gibbs*, 383 U.S. 715, 726, 86 S.Ct. 1130, 1139, 16 L.Ed.2d 218 (1966).

Either party may seek review of this report and recommendation as provided in 28 U.S.C. § 636(b) (written objections to recommended ruling must be filed within 10 days of service of same); Fed.R.Civ.P. 6(a), 6(e), & 72; and Rule 2 of the Local Rules for United States Magistrate Judges. Failure to object in a timely manner may preclude further review. *Small v. Secretary of Health & Human Servs.*, 892 F.2d 15, 16 (2d Cir.1989).

Dated at Hartford, Connecticut, this 4th day of August, 1994.