**CROWN RECYCLING AND WASTE SERVICES, INC., Plaintiff,**

v.

**VILLAGE OF LYONS and Kenneth Getty, Defendants.**

**No. 96 C 5388.**

United States District Court, N.D. Illinois, Eastern Division.

Sept. 26, 1996.

Dennis G. Walsh, Lance C. Malina, Klein, Thorpe & Jenkins, Ltd., Chicago, IL, for the Village of Lyons and Kenneth Getty.

Jerold S. Solovy, Robert L. Byman, Jeff S. Pitzer, Brian J. Masternak, Jenner & Block, Chicago, IL, for Crown Recycling and Waste Services, Inc.

## MEMORANDUM OPINION AND ORDER

DENLOW, United States Magistrate Judge.

Plaintiff Crown Recycling and Waste Services, Inc. ("Crown") brings this action in two counts against the Village of Lyons and its Village President, Kenneth Getty (collectively "Defendants"). Count I is an action under 42 U.S.C. § 1983 alleging that Defendants violated Crown's constitutional rights by depriving it of its right to procedural due process when the Village notified Crown that it intended to terminate Crown's waste disposal and recycling contract effective November 15, 1996. Count II is a pendent state law breach of contract claim arising out of the same facts. Defendants have filed a motion to dismiss counts I and II pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Defendants assert that Crown has failed to state a claim under § 1983 because post-deprivation remedies are available to Crown which satisfy the requirements of procedural due process. Defendants further assert that if the § 1983 claim is dismissed, the pendent state claim should also be dismissed. For the reasons stated below, the Court hereby grants Defendants' motion to dismiss count I, with prejudice, for failure to state a claim under 42 U.S.C. § 1983 and count II, without prejudice to Crown's right to file a state court action.

## I. MOTION TO DISMISS STANDARD

In ruling on this motion to dismiss under Fed.R.Civ.P. ("Rule") 12(b)(6), the Court accepts as true all well-pleaded facts and it draws all reasonable inferences in the light most favorable to the plaintiff. *Sherwin Manor Nursing Ctr. Inc. v. McAuliffe*, 37 F.3d 1216, 1219 (7th Cir.1994); *Dehainaut v. Pena*, 32 F.3d 1066, 1070 (7th Cir.1994). The issue on such a motion is not whether a plaintiff will ultimately prevail, but whether it is entitled to offer evidence to support its claim. *Pickrel v. City of Springfield*, 45 F.3d 1115, 1118 (7th Cir.1995). Complaints are to be read liberally, and the court may grant the motion only "if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Thompson v. Boggs*, 33 F.3d 847, 852 (7th Cir.1994).

## II. BACKGROUND FACTS

The following facts are taken from Crown's complaint. Crown is a full-service waste removal and recycling company headquartered in Elk Grove Village, Illinois. Crown cur-

rently provides waste removal and recycling services to more than two dozen municipalities in the Chicago area, including the Village of Lyons. Crown's parent corporation has been in the waste disposal industry since 1914.

The Village of Lyons is located approximately 14 miles southwest of Chicago. Crown has been providing recycling and waste removal services to the Village of Lyons since 1987. On November 15, 1994, the Village and Crown entered into a seven year agreement by which Crown was to continue to perform waste removal and recycling services through November 15, 2001. (A copy of the "Agreement" is attached as Exhibit A to the complaint.)

The Agreement consists of 31 pages, plus a one-page attachment and appears to have been prepared through arms length negotiations. The Agreement grants Crown an exclusive privilege for the collection and disposal of residential solid waste, recyclable materials and yard waste from residential single-family and multi-family dwellings less than four (4) units. (Agreement, ¶ A, p. 1).

The Agreement contains a variety of provisions which touch upon the possibility of disputes arising and the mechanism for resolving them. In the General Specifications section of the Agreement, the parties state: "while the Village recognizes that any collection service involves minor customer operating problems the intent of this contract is to insure that any such operating problems are corrected as soon as possible." (¶ C. 1., p. 3). With respect to the issue of damages which Crown may cause to public or private property while performing its services, the Agreement states that "plantings shall be repaired or replaced as soon as possible in equivalent quality at the time of damage, and at no extra charge to the property owner. If [Crown] fails to do so within a reasonable period of time, the Village may, after the expiration of a period of forty-eight (48) hours after giving [Crown] notice in writing, proceed to repair or replace such property as may be necessary at the contractor's expense." (¶ C. 12, pp. 7–8).

Similarly, in the event Crown fails to observe the established schedule of service for more than two (2) consecutive working days, the Village reserves to itself the right to determine whether there has been sufficient cause to justify the lack of observance to the schedule, and upon notice and a failure to cure, the Village reserves the right to terminate the Agreement. (¶ C. 14, pp. 8–9). In addition, with respect to unresolved service and rate disputes between Crown and city residents, the Village Manager is charged with the responsibility to mediate and arbitrate such disputes and to "render a decision that is final and binding on all parties concerned." (¶ C. 22, p. 14).

Furthermore, the Agreement contains the following provision entitled Arbitration:

> "15. **Arbitration.** Should any controversy arise between the Contractor and the Village over any of the rates, terms and specifications of this contract, or the performance of either party thereto of the covenants and agreements contained therein, then either party may request that said controversy be referred to a board of three (3) arbitrators, one appointed by the Contractor, one by the Village, and the third to be appointed by said two authorities in an effort to expedite arbitration. The parties agree that neither of them shall proceed to litigation of said controversy until an effort to settle same shall be attempted by arbitration, provided, however, that nothing in this paragraph shall be interpreted as limiting the rights of the parties hereto to apply to the courts for judicial relief after such arbitration has been carried out or attempted."

(¶ C. 15, p. 9).

Finally, the Agreement reserves to the Village the right to terminate the Agreement prior to the expiration date for any of nine (9) separate reasons, including "If [Crown] persistently fails to perform the work in accordance with the contract (including, but not limited to, failure to supply sufficient skilled workers or suitable materials or equipment)" or "If [Crown] otherwise violated in any substantial way any provisions of the contract." (¶¶ C. 40(a)(6) and (a)(9), p. 21). Unlike other provisions in the Agreement, there is no provision for notice and an opportunity to

cure contained in paragraph C. 40 of the Agreement.

At the end of February 1996, the Village president resigned and Defendant Kenneth Getty ("Getty") was appointed to serve as interim Village president until the Village's next scheduled election in April, 1997. On May 29, 1996, without any prior warning, Getty directed the Village's attorneys to notify Crown that the Village was terminating Crown's Agreement effective November 15, 1996. (A copy of the Village's termination letter of May 29, 1996 is attached as Exhibit B to the Complaint). According to the Village's attorneys, the Village "had determined" that Crown "had persistently failed to perform the work in accordance with the terms of its Agreement with the Village. Therefore, the Village will exercise its right under Section 40 to terminate the Agreement on November 15, 1996 and seeks bids for such service from other providers." (Comp. Ex. B). On June 25, 1996 the Village Council voted to ratify Getty's decision to terminate the Agreement effective November 15, 1996. Crown contends that it has satisfactorily performed under the Agreement and that its termination was unjustified. Crown filed the instant complaint alleging that Defendants breached the Agreement and violated Crown's right to procedural due process by denying it prior notice and hearing at which it could refute the Village's charges prior to the Village's decision to terminate the Agreement.

### III. COUNT I FAILS TO STATE A CLAIM UNDER 42 U.S.C. § 1983

The issue presented is whether Crown's claim that Defendants' decision to terminate the Agreement without a prior opportunity for notice and hearing gives rise to a claim for deprivation of property without due process of law. Specifically, the question raised is whether "42 U.S.C. § 1983 displaces the whole of the state law of public contracts into the federal courts through the characterization of a breach of such a contract as a

deprivation of property without due process of law, even though most such disputes have nothing to do with civil rights as ordinarily understood." *Eisen v. Eastman*, 421 F.2d 560, 564–65 (2d Cir.1969). The answer is no. *Mid–American Waste Systems, Inc. v. City of Gary, Indiana*, 49 F.3d 286 (7th Cir.1995).

A violation of 42 U.S.C. § 1983 occurs when 1) the complained of conduct is committed by a person acting under color of state law; 2) these actions deprive Crown of constitutionally protected property interests; and 3) the alleged deprivation occurs without due process of law. *Parratt v. Taylor*, 451 U.S. 527, 535, 101 S.Ct. 1908, 1913, 68 L.Ed.2d 420 (1981). "The Supreme Court has attempted to strike a balance between the competing interests of providing a remedy for injuries sustained in connection with violations of constitutional rights and avoiding the use of § 1983 as just another opportunity for parties to shop between state and federal forums." *Easter House v. Felder*, 910 F.2d 1387, 1404 (7th Cir.1990). Keeping this balance in mind the court will discuss each element in turn.

### A. Under color of state law

The parties agree that the termination of the Agreement was committed under color of state law.

### B. Property Interest

In order to state a claim for violation of due process, Crown must show that it had a protectible property or liberty interest that was taken away by Defendants without a hearing.[1] *Miller v. Henman*, 804 F.2d 421 (7th Cir.1986), cert. denied, 484 U.S. 844, 108 S.Ct. 136, 98 L.Ed.2d 93 (1987). "The property interest must be more than a unilateral expectation—it must be a legitimate claim of entitlement." *Triad Associates, Inc. v. Chicago Housing Authority*, 892 F.2d 583, 588 (7th Cir.1989). Finally, "[p]roperty interests ... are created and their dimensions are

---

1. Crown does not seriously argue that it was deprived of a liberty interest. However, even if Crown asserts deprivation of a liberty interest, in regard to any alleged injury to their reputation, the Seventh Circuit has held that reputation is

not a liberty interest within the meaning of the fifth or fourteenth amendments. *Cronson v. Clark*, 810 F.2d 662, 665 (7th Cir.), cert. denied, 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 151 (1987).

defined by existing rules or understandings that stem from an independent source such as state law ..." *Board of Regents of State Colleges v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972).

The state of the law concerning whether a contract creates a "property" interest sufficient to be protected under the due process clauses of the fifth and fourteenth amendments is ambiguous. (See Judge Easterbrook's discussion of this vexing topic in *Mid–American Waste Systems, Inc. v. City of Gary, Indiana,* 49 F.3d 286, 289–290 (7th Cir.1995)). "Courts have resisted the implication that every government-contract case belongs in federal court. At least three circuits have held that only contracts creating a special status (employment, for example) count as 'property'. Other contracts—these courts call them 'mere contracts'—do not create property and therefore must be enforced in state court." Id. at 289. The Seventh Circuit has adopted a broader test of property stating: "If a contract creates rights specific enough to be enforced in state court by awards of damages or specific performance, then it creates a legitimate claim of entitlement; and if it creates such a claim, it is 'property.'" Id. at 290. Under this formulation, Crown has a property interest if it is successful in demonstrating that the Village breached the Agreement. The Court does not find it necessary to further tackle this issue, because even if we assume that Crown has a "property" interest in the Agreement, its claim is not actionable because it has not been denied due process.

### C. Due Process

■ This case turns on the question of whether Crown's right to litigate a breach of contract or other state court action in an Illinois state court constitutes due process or whether a prior hearing by the Village was necessary. Due process "is a flexible concept that varies with the particular situation." *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990). Courts must weigh several factors to determine what procedural protections the Constitution requires in a particular case. *Id.* Those factors include:

"the private interest that will be affected by the official action; second, the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail."

*Mathews v. Eldridge,* 424 U.S. 319, 325, 96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976).

■ Applying this analysis courts usually find that the Constitution requires some sort of hearing before the State may deprive someone of either their liberty or property. *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990). However, in some circumstances a statutory provision for a postdeprivation hearing, or a common-law tort remedy for erroneous deprivation, satisfies due process. *Zinermon v. Burch,* 494 U.S. 113, 127, 110 S.Ct. 975, 984, 108 L.Ed.2d 100 (1990); *Logan v. Zimmerman Brush Co.,* 455 U.S. 422, 436, 102 S.Ct. 1148, 1158, 71 L.Ed.2d 265 (1982).

In *Parratt v. Taylor,* 451 U.S. 527, 544, 101 S.Ct. 1908, 1917, 68 L.Ed.2d 420 (1981), the Supreme Court recognized that "postdeprivation remedies made available by a state can, under certain circumstances, satisfy the requirements of procedural due process." Also, the Court rejected the proposition that a state is always required to provide a hearing prior to a deprivation. *Id.* at 540, 101 S.Ct. at 1915. *Parratt* represents a special case of the general *Mathews v. Eldridge* analysis, in which postdeprivation tort remedies are all the process that is due, simply because they are the only remedies the State could be expected to provide. However, the Seventh Circuit has held "that *Parratt* must be read broadly enough to avoid turning the fourteenth amendment into a font of tort law to be superimposed upon whatever systems may already be administered by the States." *Easter House v. Felder,* 910 F.2d 1387, 1404 (7th Cir.1990).

In *Hudson v. Palmer,* 468 U.S. 517, 104 S.Ct. 3194, 82 L.Ed.2d 393 (1984), the Court, in deciding whether a correction officer's in-

tentional destruction of a prisoner's personal items constituted a Section 1983 violation, extended *Parratt* to cover the random and unauthorized "intentional conduct" of state employees. In reaffirming the rationale in *Parratt,* the Court stated that the "controlling inquiry is solely whether the state is in a position to provide for predeprivation process." *Id.* at 534, 104 S.Ct. at 3204.

Finally, the Court in *Zinermon v. Burch,* 494 U.S. 113, 110 S.Ct. 975, 108 L.Ed.2d 100 (1990), held that while deprivations which are not "random and unauthorized" constitute a violation of Section 1983, the principles of *Parratt* and *Hudson* still apply to those deprivations which are not predictable. "Thus, *Parratt* is not an exception to the *Mathews* balancing test, but rather an application of that test to the unusual case in which one of the variables in the *Mathews* equation—the value of predeprivation safeguards—is negligible in preventing the kind of deprivation at issue." *Zinermon v. Burch,* 494 U.S. 113, 129, 110 S.Ct. 975, 985, 108 L.Ed.2d 100 (1990).

▌ This Court believes that the Seventh Circuit's decisions in *Easter House v. Felder,* 910 F.2d 1387 (7th Cir.1990) and *Mid–American Waste Systems, Inc. v. City of Gary, Indiana,* 49 F.3d 286 (7th Cir.1995) are controlling and that no due process violations exist because Crown has readily available state court remedies both before and after the November 15, 1996 termination date.

The Seventh Circuit in its en banc decision, *Easter House v. Felder,* 910 F.2d 1387, 1406 (7th Cir.1990), held that courts "should not reject the application of *Parratt* unless the remedy which an injured party may pursue in state court can readily be characterized as inadequate to the point that it is meaningless or nonexistent and, thus, in no way can be said to provide the due process relief guaranteed by the fourteenth amendment." The court reasoned that due process is not denied simply because a plaintiff may not proceed in federal court. "[T]he fact that an injured party might not be able to recover under [the state law] remedies the full amount which he might receive in a Section 1983 action is not ... determinative of the adequacy of the state remedies." *Easter*

*House v. Felder,* 910 F.2d 1387, 1406 (7th Cir.1990), citing 468 U.S. at 535, 104 S.Ct. at 3204–05. In *Easter House,* the Seventh Circuit held that a plaintiff's common law remedies against a former employee who solicits key clients, a claim for tortious interference with business relationships and a potential claim for deceptive trade practices constituted "meaningful post-deprivation remedies" sufficient to provide the requisite due process protection. The court directed the dismissal of plaintiff's § 1983 claims.

In deciding whether a municipality's breach of contract gave rise to a Section 1983 claim, the Seventh Circuit stated that "[w]ithout purporting to decide the issue, we believe that [Triad's breach of contract claim] may place it in that category of cases in which the remedies available to Triad under state contract law preclude a finding of a violation of the fourteenth amendment." *Triad Assoc., Inc., v. Chicago Housing Authority,* 892 F.2d 583, 590 (7th Cir.1989). Implicit in *Triad* is the notion that a state court adjudication of the breach of contract claim would be sufficient to satisfy due process.

▌ Recently, the Seventh Circuit in *Mid–American Waste Systems, Inc. v. City of Gary, Indiana,* 49 F.3d 286 (7th Cir.1995) held that in a breach of contract action under a lease between a waste hauler and a city, a prior hearing is unnecessary and an adjudication in state court satisfies due process. The court went on to say that "[t]he adequacy of litigation as a means to determine the meaning of a contract is a premise in our legal system." *Id.* at 290. In language that is directly on point to the issue before this Court, the Seventh Circuit held: "The point we are making, by contrast, is that when the issue is the meaning of a commercial contract, a prior hearing is unnecessary, and the opportunity to litigate in state court is all the process 'due' to determine whether the state has kept its promise." Id. at 291.

While the parties do not address the various state causes of action that Crown may pursue, a brief discussion of the potential state law remedies demonstrates that Crown indeed will receive due process in the adjudi-

cation of their claim. The most obvious claim is for breach of contract. It is well settled that when a party to a contract fails to perform a cause of action for breach will lie. While this action would constitute a postdeprivation hearing it is sufficient to comport with the requirements of due process. As expressed by the court in *Mid–American Waste Systems*, "litigation after the fact provides an ample opportunity to test the validity of the city's interpretation and supply a remedy if the city has erred." Id. at 292.

Second, Crown could file an action for declaratory judgment. 735 ILCS 5/2–701. The termination of the waste removal contract is scheduled for November 15, 1996, and in the interim, Crown can seek a prompt adjudication of its rights under the contract. While counsel for Crown points out that the state court process may be more time consuming, the Seventh Circuit has recognized that the characterization of the state recovery process as a "lengthy and speculative process" does not open the door to a § 1983 claim. *Easter House v. Felder*, 910 F.2d 1387, 1406 (7th Cir.1990). Nothing prevents Crown from filing a declaratory judgment action in state court, prior to the termination of the contract, to determine its contractual rights and whether the Village and Getty's actions were proper.

Crown may also seek an injunction to prevent Crown from cancelling the contract. 735 ILCS 5/11–102. Whether Crown can establish the prerequisites for an injunction or be left with a remedy at law for money damages is sufficient to give Crown all the process it is due. "Section 1983 must be preserved to remedy only those deprivations which actually occur without adequate due process of law, such as those which result from a state's conscious decision to ignore the protections guaranteed by the Constitution." *Easter House v. Felder*, 910 F.2d 1387, 1403 (7th Cir.1990).

Crown argues that the present situation is analogous to cases involving breach of employment contracts. Crown relies on a host of employment contract cases for the proposition that a state court contract action is independent of a section 1983 action.[2] In the employment area the courts have held that a pre-deprivation hearing is required and that a postdeprivation state court cause of action does not satisfy due process. *Hostrop v. Board of Junior College*, 471 F.2d 488 (7th Cir.1972); *Vail v. Board of Education*, 706 F.2d 1435, 1438 (7th Cir.1983). However, the Seventh Circuit has concluded that employment contracts differ from general commercial contracts because when breached they result in the "termination of a person's livelihood ..." *Vail v. Board of Education of Paris Union School Dist. No. 95*, 706 F.2d 1435, 1446 (7th Cir.1983, J. Eschbach concurring). Certainly it could be argued that any breach of contract would result in the termination of a person's livelihood, however, the Seventh Circuit has made it clear that where the interest is monetary and no one is at risk of starvation if the action precedes the hearing, state court relief is sufficient. "Governments often take property and settle up years later; so, too, with breach of contract." *Mid–American Waste*, 49 F.3d at 292.

Money damages do not sufficiently address the termination of an employment contract because an employee's "reliance interest in [the employment relationship], with all its significant real life consequences, [is] destroyed upon the [employee's] termination." *Vail*, 706 F.2d at 1446. Thus, employment contracts represent a unique situation in which the courts have decided that predeprivation hearings are necessary to satisfy procedural due process.

Crown also relies on *MEDCARE HMO v. Bradley*, 788 F.Supp. 1460 (N.D.Ill.1992). In *MEDCARE*, the State terminated its con-

2. *Hostrop v. Board of Junior College*, 471 F.2d 488 (7th Cir.1972) (discharged college president was entitled to notice of the charges against him, notice of the evidence upon which the charges will be based, a hearing before a tribunal possessing apparent impartiality, and a chance to present witnesses and confront adverse evidence); *Vail v. Board of Education*, 706 F.2d 1435, 1438 (7th Cir.1983) (a state court contract action was not an exclusive remedy where a football coach had been terminated by a local school board without any predeprivation process.); *Rockford Principals & Supervisors Ass'n v. Board of Education*, 721 F.Supp. 948 (N.D.Ill. 1989) (court disagreed that a state court contract action is all the process due to the plaintiffs.)

tract with Medcare to provide health care services. The contract was terminated without a hearing or notice and the court held that the due process clause requires predeprivation notice of the charges and a predeprivation hearing in which Medcare could challenge the validity of the charges. *MEDCARE HMO v. Bradley*, 788 F.Supp. 1460, 1468–69 (N.D.Ill.1992). Crown argues that *MEDCARE* is factually identical to the present situation and that the court should find that a predeprivation hearing was required. However, there is a fundamental difference between *MEDCARE* and the present situation. In *MEDCARE* Section 12–4.25 of the Illinois Public Aid Code mandated that a vendor's contract could only be terminated for "cause" and after "reasonable notice and [an] opportunity for a hearing." *Id.* at 1467. Therefore, the court's decision was premised upon the legislature's finding that some contracts require a hearing and can only be terminated for cause. In the case at bar, Crown did not bargain for such a pretermination hearing, and the Court will not rewrite the Agreement to afford Crown a procedure which it did not place into the Agreement.

As Judge Shadur presciently pointed out several years before the *Parratt* decision, a "plaintiff's right to sue for breach of contract in the state court system comports with the Fourteenth Amendment ..." *Buck v. Village of Minooka*, 552 F.Supp. 298, 300 (N.D.Ill.1982).

A state court contract action sufficiently assesses the propriety of the Village's actions for purposes of the due process clause. Recently, the District Court of Connecticut decided that the rationale of *Parratt* is equally applicable to contract cases because "[a] contrary conclusion would result in the somewhat puzzling holding that, before engaging in behavior that may later be judicially determined to constitute a breach, the state must hold some kind of hearing to determine whether the proposed behavior is a breach." *A. Aiudi & Sons v. Town of Plainville*, 862 F.Supp. 737, 743 (D.Conn.1994).

This case represents such a situation. There is no legislative provision for a hearing nor was one bargained for by the parties. The Due Process clause was "never intended to create, via Section 1983, a font of contract law governing ordinary contractual breaches ..." *Buck v. Village of Minooka*, 552 F.Supp. 298, 300 (N.D.Ill.1982.)

## IV. THE STATE BREACH OF CONTRACT CLAIM IN COUNT II IS DISMISSED WITHOUT PREJUDICE

Count II is an Illinois breach of contract claim which is being brought pursuant to this Court's pendent jurisdiction. Since the sole claim arising under federal law has been dismissed, count II is no longer pendent and is dismissed for lack of jurisdiction, without prejudice to Crown's right to refile the action in state court. *Carnegie–Mellon Univ. v. Cohill*, 484 U.S. 343, 350, 108 S.Ct. 614, 619, 98 L.Ed.2d 720 (1988).

## V. CONCLUSION

For the foregoing reasons, **the Village of Lyons and Kenneth Getty's Motion to Dismiss count I of Crown's complaint, with prejudice, for failure to state a claim under 42 U.S.C. § 1983 is GRANTED, and the claim in count II for breach of contract is dismissed without prejudice.**