**Frank H. GLATT, Plaintiff–Appellant,**

v.

**CHICAGO PARK DISTRICT, Jim Halpern, and Robert Nelson, Defendants–Appellees.**

No. 95–2932.

United States Court of Appeals, Seventh Circuit.

Argued Feb. 27, 1996.

Decided June 17, 1996.

Rehearing Denied July 9, 1996.

Kenneth N. Flaxman (argued), Chicago, IL, for plaintiff-appellant.

Kathleen M. McCabe, Cassiday, Schade & Gloor, Chicago, IL, Nelson A. Brown, Jr. (argued), Chicago, IL, for defendant-appellee.

Before POSNER, Chief Judge, and BAUER and EVANS, Circuit Judges.

POSNER, Chief Judge.

Frank Glatt, the owner of a 40–foot yacht, was distressed when the Chicago Park District, the owner of Diversey Harbor in Chicago, reassigned him from slip D19 in the

harbor to slip D5. So, since this is America, he brought suit against the Park District and two of its employees under 42 U.S.C. § 1983, claiming that the defendants had violated his constitutional rights. His principal claim is that he had a property right in D19, within the meaning of the due process clause of the Fourteenth Amendment, which the defendants deprived him of without due process of law. The district judge dismissed this claim on the pleadings because he thought that the Chicago Park District Code, in ch. 8, § C, makes clear that the holder of a harbor permit, even though it is called a "permanent" permit, as was Glatt's, does not have an entitlement to a specific slip. The Code does say that "the renewed permit ordinarily will be . . ., if a permanent mooring permit, for the permittee's prior assigned mooring." But in the word "ordinarily" we have our first hint that the right to the same slip may be highly qualified. And this is confirmed by the further provision that the Marine Director "may change the permittee's assigned harbor and/or mooring if, in the exercise of his/her discretion, he/she determines that such change is needed because of efficiency, safety, construction, repair, or other reasonable circumstances, including but not limited to water level or lake bed changes."

All property rights are qualified—by the police power, the power of eminent domain, the taxing power, and much else besides. But at some point the qualifications become so numerous and open-ended, the "right" such a sieve, that the sense of entitlement evanesces. *Board of Regents v. Roth,* 408 U.S. 564, 577, 92 S.Ct. 2701, 2709, 33 L.Ed.2d 548 (1972); *Cushing v. City of Chicago,* 3 F.3d 1156, 1161 (7th Cir.1993); *Yatvin v. Madison Metropolitan School District,* 840 F.2d 412, 417 (7th Cir.1988); *Reed v. Village of Shorewood,* 704 F.2d 943, 948 (7th Cir. 1983); *Christ Gatzonis Electrical Contractor, Inc. v. New York City School Construction Authority,* 23 F.3d 636, 641 (2d Cir.1994). That is the case here. The Marine Director is given uncabined discretion to change a permit holder's harbor or slip whenever the director thinks that the change is necessary because of "efficiency," whatever that means in this context. Suppose you owned a mobile home that was parked in a space in a trailer park, and the park's owner reserved the right to move the home to another space if he determined in the exercise of his discretion that the move was necessary because of efficiency, safety, construction, repair, or other reasonable circumstance. Would you think you had an *entitlement* to retain his space? You might *conceivably* (though we think this improbable) have a contractual right, because the discretion of the park's owner, like that of the Marine Director here, is not left completely at large but is to be exercised with reference to particular conditions, although whether the parties would intend that exercise to be subject to further review is highly doubtful. But you would not have that solider confidence in being able to remain that goes by the name of having an entitlement or property right. The words "property" and "entitlement" connote an interest that is securely, though not absolutely, the holder's; see, besides the cases cited earlier, *Bayview–Lofberg's, Inc. v. City of Milwaukee,* 905 F.2d 142, 145–46 (7th Cir.1990); *Cornelius v. LaCroix,* 838 F.2d 207, 210 (7th Cir.1988); *Brown v. Brienen,* 722 F.2d 360, 364–65 (7th Cir.1983); *San Bernardino Physicians' Services Medical Group, Inc. v. County of San Bernardino,* 825 F.2d 1404, 1408–09 (9th Cir. 1987). The conditions that the Chicago Park District Code placed on Glatt's retention of slip D19 were too many and vague to allow him to have a secure expectation of continued use.

Thus far we have assumed that any substantive entitlement is a property right for purposes of the Fourteenth Amendment. That is the tendency of the cases, e.g., *Chaney v. Suburban Bus Division,* 52 F.3d 623, 627 (7th Cir.1995); *Mid–American Waste Systems, Inc. v. City of Gary,* 49 F.3d 286, 289–90 (7th Cir.1995); *Cassidy v. Hawaii,* 915 F.2d 528, 530 (9th Cir.1990), and has the advantage of simplicity; but there is enough play in the constitutional joints to avoid a rigid equating of the two concepts. Not all contractual entitlements, even of a substantive character, rise to the level of constitutional property. *Swick v. City of Chicago,* 11 F.3d 85, 87–88 (7th Cir.1993); *Yatvin v. Madison Metropolitan School District, supra,* 840 F.2d at 417; *Brown v. Brienen,*

*supra,* 722 F.2d at 364–65; *Local 342 v. Town Board of Town of Huntington,* 31 F.3d 1191, 1195–96 (2d Cir.1994); *Martz v. Incorporated Village of Valley Stream,* 22 F.3d 26, 31 (2d Cir.1994); *San Bernardino Physicians' Services Medical Group, Inc. v. County of San Bernardino, supra,* 825 F.2d at 1408–09; cf. *Horwitz–Matthews, Inc. v. City of Chicago,* 78 F.3d 1248, 1250 (7th Cir.1996). At argument Glatt's lawyer acknowledged doubt that the Fourteenth Amendment protects in the name of property the right to have one's vanity license plate renewed with the identical letters, even if the licensing authority has neglected to avoid using words of entitlement. If Diversey Harbor operates a bar for yachtsmen, we do not think that Mr. Glatt could claim a property right in a particular stool even if the manager of the bar promised him that it was his forever and had apparent or even actual authority to bind his employer by such a promise. The Constitution is trivialized, the majesty of constitutional law degraded, when the concept of property is allowed to expand to a point at which irascible rich men can use it to lever petty disputes with local officials (Mr. Glatt is worried lest underwater weeds at D5 foul the propellers of his yacht) into federal cases. The Marine Director did not kick Glatt's yacht out of Chicago, to make it *The Flying Dutchman* of Lake Michigan, or even out of Diversey Harbor, but merely transferred it from one boat slip to another nearby. To deem such a transfer a deprivation of property under the due process clause is constitutional hyperbole. *Swick v. City of Chicago,* 11 F.3d 85, 87 (7th Cir.1993); *Downtown Auto Parks, Inc. v. City of Milwaukee,* 938 F.2d 705, 710 (7th Cir.1991); *Brown v. Brienen, supra,* 722 F.2d at 364. We hold that a rented boat slip is not property, and the reassigning of the renter to another slip is not a deprivation of property, within the meaning of the due process clause.

Glatt's secondary, although actually somewhat more substantial, claim is that the district judge should have allowed him to amend his complaint to add a charge of retaliation for the filing of the original complaint. The original complaint had been filed on September 2, 1993, the day after an internal investigation by the Park District had found colorable merit in Glatt's claim not to have received timely notice of the transfer from D19 to D5. On November 17, the Park District decided not to pursue the matter because there had been no witnesses to the meeting at which one of the defendants claimed, and Glatt denied, to have notified Glatt of the transfer. Glatt contends that this about-face, which extinguished his chances of getting D19 back through the internal procedures of the Park District, was in retaliation for his filing this lawsuit. On January 2, 1995, Glatt moved to amend (he should have said, to "supplement") the complaint to add the new claim of retaliation to his charges against the Park District.

The legal basis for the new claim is not articulated clearly. Glatt argues flatly that retaliation for filing a lawsuit violates the First Amendment, but this is not true in general. Some lawsuits are a vehicle for protected speech or for petitioning the government for redress of grievances, see, e.g., *NAACP v. Button,* 371 U.S. 415, 429–31, 83 S.Ct. 328, 336–37, 9 L.Ed.2d 405 (1963); *Bill Johnson's Restaurants, Inc. v. NLRB,* 461 U.S. 731, 741, 103 S.Ct. 2161, 2169, 76 L.Ed.2d 277 (1983); *Hoeber ex rel. NLRB v. Local 30,* 939 F.2d 118, 126 (3d Cir.1991), but others are not. *Lashbrook v. Oerkfitz,* 65 F.3d 1339, 1349 (7th Cir.1995). The filing of an ordinary tort or contract suit could not plausibly be compared to making a speech or writing a book or petitioning the government for a redress of grievances. Glatt's suit, however, since it complains of allegedly unconstitutional behavior by public officials, could well be regarded as a form of such petition, and so a claim of retaliation would be actionable in a suit under the Constitution. See *Auriemma v. Rice,* 910 F.2d 1449, 1460 (7th Cir.1990) (en banc); *Zorzi v. County of Putnam,* 30 F.3d 885, 895 (7th Cir. 1994). But we do not think the district judge abused his discretion in refusing to allow the claim to be added to the complaint. The judge gave two reasons, and while the first was bad the second was good, and as the two reasons are independent the error of the first does not poison the second. The bad ground was that Glatt had failed to allege that the retaliation was pursuant to a "custom or

**194**

policy" of the Chicago Park District. As we explained in *Jackson v. Marion County*, 66 F.3d 151 (7th Cir.1995), no such allegation is necessary in a case, such as this, in which the plaintiff claims that the defendant committed the unlawful act directly rather than through employees below the policymaking level.

■■■ The good ground for denying Glatt's motion was that Glatt failed to substantiate it. He says that it's just a pleading; substantiation is for later, when the pleading is challenged by a motion for summary judgment. This is true of an original complaint but not of a motion to amend or supplement the complaint, a motion that being addressed to the discretion of the district court requires more to compel acceptance than the fact that the pleading sought to be added states a claim. Especially when the motion is filed long after the original complaint was filed (16 months after, in this case), and is based solely on a document that the movant had discovered more than a year earlier, the court is entitled to demand reasons for thinking that the denial of the motion would work a serious injustice. The court not only may but should consider the likelihood that the new claim is being added in a desperate effort to protract the litigation and complicate the defense; its probable merit; whether the claim could have been added earlier; and the burden on the defendant of having to meet it. *Foman v. Davis*, 371 U.S. 178, 182, 83 S.Ct. 227, 230, 9 L.Ed.2d 222 (1962); *Hindo v. University of Health Sciences*, 65 F.3d 608, 615 (7th Cir.1995); *Thompson v. Boggs*, 33 F.3d 847, 853 (7th Cir.1994); *Chaveriat v. Williams Pipe Line Co.*, 11 F.3d 1420, 1430 (7th Cir.1993). Although these are cases under Fed.R.Civ.P. 15(a), not Rule 15(d), which governs the supplementation of a pleading as a result of events subsequent to the filing of the original pleading and is therefore the rule applicable to Glatt's motion, the standard is the same. *Jones v. Hamelman*, 869 F.2d 1023, 1026 (7th Cir.1989); *Twin Disc, Inc. v. Big Bud Tractor, Inc.*, 772 F.2d 1329, 1338 (7th Cir.1985); *Wisconsin v. Baker*, 698 F.2d 1323, 1331 n. 8 (7th Cir.1983); *Intrepid v. Pollock*, 907 F.2d 1125, 1131 (Fed.Cir. 1990); 6A Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice*

*and Procedure* § 1504, pp. 185–86 (2d ed.1990).

All the factors mentioned in the cases interpreting these rules weighed against the grant of Glatt's motion. We note in particular that his contention that the Park District decided to abandon the investigation of his complaint because he had sued is based wholly on the principle of *post hoc ergo propter hoc*: the abandonment followed the suit, therefore must have been caused by it.

Enough said.

AFFIRMED.