UNION PACIFIC RAILROAD COMPANY, a Utah corporation, Plaintiff,

v.

The VILLAGE OF SOUTH BARRINGTON, Warren Fuller, in his individual capacity and as President of the Village of South Barrington; Sheila Fortney, in her individual capacity and as Village Clerk of the Village of South Barrington, and Anthony Ariola, Thomas Siok, Kenneth Tafel, Bernadine Rosenthal, Gregory Scurto, and Patricia Graft, in their individual capacities and as the members of the Board of Trustees of the Village of South Barrington, Defendants.

No. 96 C 1698.

United States District Court, N.D. Illinois, Eastern Division.

Jan. 7, 1997.

Mark Allen Stang, Clifford L. Weaver, Matthew E. Norton, Burke, Weaver & Prell, Chicago, IL, for Union Pacific R. Co.

Philip Anthony Luetkehans, Mary Elizabeth Dickson, Schirott & Luetkehans, P.C., Itasca, IL, Barry S. Alberts, Donald S. Alberts, Donald J. Kreger, Ruth E. Krugly, Schiff, Hardin & Waite, Chicago, IL, for Village of South Barrington, Warren Fuller, Sheila Fortney, Thomas Siok, Kenneth Tafel, Anthony Ariola.

Philip Anthony Luetkehans, Mary Elizabeth Dickson, Schirott & Luetkehans, P.C., Itasca, IL, David F. Pardys, Wildman, Harrold, Allen & Dixon, Waukegan, IL, for Bernadine Rosenthal, Patricia Graft.

## MEMORANDUM OPINION AND ORDER

GETTLEMAN, Judge.

Plaintiff, Union Pacific Railroad Company ("Union Pacific"), brings this nine-count amended complaint pursuant to 42 U.S.C. § 1983 and state law against the Village of South Barrington ("Village"); Warren Fuller ("Fuller"), in his individual capacity and as President of the Village; Sheila Fortney ("Fortney"), in her individual capacity and as Village Clerk of the Village; and Anthony Ariola ("Ariola"), Thomas Siok ("Siok"), Kenneth Tafel ("Tafel"), Bernadine Rosenthal ("Rosenthal"), Gregory Scurto ("Scurto"), and Patricia Graft ("Graft") in their individual capacities and as the members of the Board of Trustees of the Village. Plaintiff alleges constitutional violations based upon due process, equal protection, impairment of contracts, as well as state law claims of fraud, conversion, money had and received, breach of warranty, and defamation. Defendants bring the instant motion to dismiss all counts. For the reasons set forth below, defendants' motion is granted in part and denied in part.

### FACTS

A. *Development of the Midlands Property*

Plaintiff is a corporation incorporated under the laws of the State of Utah, with its principal place of business in the State of

Nebraska. The Midlands at South Barrington ("Midlands Property") is a subdivision plot of approximately ninety-four acres owned by plaintiff and the Midlands at South Barrington Owners Association (the "Owners Association"). Plaintiff's predecessor in title, Upland Development Company ("Upland"), acquired the Midlands Property in 1987. Plaintiff and Upland are, and were at all relevant times, wholly-owned subsidiaries of Union Pacific Corporation. In 1995, plaintiff formally succeeded to Upland's ownership of the Midlands Property. (Hereinafter, Upland and plaintiff are simply referred to as plaintiff).

In 1987, the Midlands Property was located in the Village. Shortly after acquiring the Midlands Property, plaintiff sought subdivision and development approvals from the Village. On August 18, 1988, the Village passed a resolution approving plaintiff's final plat of subdivision. At or about that time, the Village also approved the installation of various improvements to the Midlands Property, including a private road, a private wastewater treatment system, and a private well and water system. The approval was conditioned upon: (1) plaintiff's submission of an appropriate subdivision bond to guarantee installation of the improvements as required by Village ordinance; and (2) the execution of a development agreement to install the public improvements as provided in the final engineering plans submitted to the Village.

Plaintiff asserts that the Village's general subdivision ordinance ("Subdivision Ordinance") required it to post two bonds: (1) a performance bond, either in the form of a cash bond or an irrevocable letter of credit, to secure the completion of the improvements; and (2) a guarantee bond, "as a condition of acceptance of all improvements upon their completion," to "guarantee the continued acceptability of the improvements." The guarantee bond was required to be in an amount equal to at least 20% of the cost of the improvements, approved by the Village attorney, and remain in effect for a minimum of two years.

On November 23, 1988, FirsTier Bank, N.A. ("Bank"), in satisfaction of the Village's performance bond requirement, issued an ir-

revocable standby letter of credit ("Letter of Credit") in favor of the Village for $5,590,000. The express terms of the Letter of Credit set forth the conditions upon which the Village may draw on it: The Village must present a signed statement from the Village Clerk, Sheila Fortney, certifying that plaintiff "has failed to perform one or more of the provisions of the ordinance for the Subdivision and Platting of Land and Providing for Installation of Subdivision Improvement, No. 0–77–57A and the agreements executed pursuant to this Ordinance."

On several occasions, the Bank extended the expiration date of the Letter of Credit beyond the original date of November 17, 1989, with the final expiration date being December 31, 1995. Also, as improvements were completed on the Midlands Property, the face amount of the Letter of Credit was reduced. On or around August 29, 1991, plaintiff, claiming that all the improvements on the Midlands Property had been completed, requested the Village to decrease the face amount of the Letter of Credit to approximately $250,000 and to treat it as a guarantee or maintenance bond. At the October 10, 1991 Board of Trustees meeting, the Village agreed to reduce the Letter of Credit to $250,000 and to treat it as a two-year maintenance bond.

**B.** *The Disconnection Litigation in State Court*

On June 7, 1993, plaintiff filed a petition the Circuit Court of Cook County to disconnect eighty-nine acres of the Midlands Property ("disconnection property") from the corporate limits of the Village ("disconnection litigation"), pursuant to the Illinois Municipal Code, 65 ILCS 5/7–3–6. The Village asserted an affirmative defense, alleging that the Village and plaintiff had an implied contract that plaintiff would never disconnect any part of the Midlands Property from the corporate limits of the Village. The litigation lasted from June through December, 1995. The Circuit Court rejected the Village's defense and, on December 6, 1995, ordered that the disconnection property be disconnected from the corporate limits of the Village. During the course of the disconnection litigation, an

attempt, albeit unsuccessful in the end, was made to settle the case. Plaintiff entered into a settlement agreement with the Village ("Settlement Agreement"), whereby plaintiff agreed to dismiss the disconnection litigation, and the Village agreed to purchase the Midlands Property for $14.25 million. Pursuant to the agreement, the Village paid plaintiff $250,000 as a non-refundable earnest money deposit.

According to plaintiff, the Village planned to sell the Midlands Property to a residential developer ("developer") that intended to build three hundred (300) single-family homes on the property. Plaintiff alleges that the Village received $250,000 in earnest money from the developer, refundable in the event that the Village did not approve the zoning to allow construction of the 300 homes. After various public hearings on the developer's proposed plan, the Village failed to approve the residential zoning. Consequently, plaintiff asserts, the Village refunded the developer's $250,000 earnest money.

After the public hearings, the Settlement Agreement broke down. Pursuant to the terms of the agreement, plaintiff retained the $250,000 earnest money deposit as liquidated damages.

C. *The Drawing of the Letter of Credit*

On November 8, 1995, the Village Clerk, Sheila Fortney, sent a letter to plaintiff requesting that plaintiff renew the Letter of Credit, which was set to expire on December 31, 1995. The Village also requested plaintiff to notify the Village by December 3, 1995, that plaintiff would renew the Letter. Plaintiff did not comply with these requests.

On December 14, 1995, the Village enacted an ordinance ("Amending Ordinance") amending the Village's subdivision ordinance. The Amending Ordinance provides, in part:

In the event a letter of credit is due to expire, and the Village has not received a replacement letter of credit 14 days prior to the expiration date thereof, the Village Clerk [Fortney] or the Village President [Fuller] is authorized to draw on the letter of credit in accordance with the terms of the letter of credit.

The Amending Ordinance also sets forth various purposes pursuant to which the Village may draw on a letter of credit.

On or about December 27, 1995, the Village tendered a sight draft and a certificate ("Certificate") to the Bank calling the entire $250,000 balance of the Letter of Credit. The Certificate stated that plaintiff "has failed to perform one or more of the provisions of the Ordinance for the Subdivision and Platting of Land Providing for Installation of Subdivision Improvements, No. 0–77–57A and the agreements executed pursuant to this Ordinance." The Village asserts that it took this action because of plaintiff's failure to renew the Letter of Credit and plaintiff's alleged violation of the development agreement with the Village pertaining to the Midlands Property. The Bank subsequently paid the Village $250,000 pursuant to the Letter of Credit.

On March 25, 1996, plaintiff filed a complaint against: the Village; Fuller, in his individual and official capacity as President of the Village; Fortney, in her individual and official capacity as the Village Clerk; and Ariola, Siok, Tafel, Rosenthal, Scurto, and Graft, in both their individual and official capacities as members of the Village Board of Trustees ("Board members"). On May 1, 1996, plaintiff filed its amended complaint. Counts I through IV allege Section 1983 violations of plaintiffs' constitutional rights based upon procedural due process, substantive due process, equal protection, and impairment of contract claims regarding the drawing on the Letter of Credit. Counts V through IX allege state law claims of fraud, conversion, money had and received, breach of warranty, and defamation.

**DISCUSSION**

I. STANDARD

Under Rule 12(b)(6), a court may dismiss a case "for failure to state a claim upon which relief may be granted." Fed.R.Civ.P. 12(b)(6). The motion is based on the sufficiency of the complaint, not the merits of the case. *Triad Assocs., Inc. v. Chicago Housing Authority,* 892 F.2d 583, 586 (7th Cir. 1989), *cert. denied,* 498 U.S. 845, 111 S.Ct.

129, 112 L.Ed.2d 97 (1990). All well-pleaded facts will be taken as true, and all inferences are made in favor of the plaintiff. *Montgomery Ward v. Warehouse Mail Order, Office, Technical and Professional Employees Union*, 911 F.Supp. 1094, 1099 (N.D.Ill.1995). Dismissal is proper only if it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim that would entitle him to relief. *Conley v. Gibson*, 355 U.S. 41, 45–46, 78 S.Ct. 99, 101–02, 2 L.Ed.2d 80 (1957).

A Rule 12(b)(6) motion should be read in the context of Rule 8(a)'s liberal pleading requirements. *EEOC v. Home by Hemphill, Inc.*, 1995 WL 683502, at *1 (N.D.Ill. Nov.16, 1995). Because the Rules mandate only notice pleading, they do not require that a complaint state facts sufficient to constitute a cause of action. Fed.R.Civ.P. 8(a)(2). Rather, a complaint need only make a short and plain statement of the claim showing that the pleader is entitled to relief. *Id.* Accordingly, in ruling on a motion to dismiss, the court must determine " 'whether relief is possible under any set of facts that could be established consistent with the allegations' in the complaint." *First Nat'l Bank of Chicago v. ACCO USA, Inc.*, 842 F.Supp. 311, 316 (N.D.Ill.1994) (quoting *Bartholet v. Reishauer A.G.*, 953 F.2d 1073, 1078 (7th Cir. 1992)). The court, nevertheless, is not obliged to accept mere conclusory allegations, without any supporting facts, as true. *See Tamari v. Bache & Co. (Lebanon) S.A.L.*, 565 F.2d 1194, 1199 (7th Cir.1977), *cert. denied*, 435 U.S. 905, 98 S.Ct. 1450, 55 L.Ed.2d 495 (1978).

## II. CLAIMS AGAINST DEFENDANTS IN THEIR OFFICIAL CAPACITIES

█ It is well-settled law that claims against municipal officials in their official capacities are really claims against the municipality and, thus, are redundant when the municipality is also named as a defendant. *Kohn v. Mucia*, 776 F.Supp. 348 (N.D.Ill. 1991). Here, plaintiff names the Village in all counts of its complaint. Accordingly, all counts against the Board members, Fuller, and Fortney in their official capacities are dismissed.

## III. LEGISLATIVE IMMUNITY

### A. *Absolute Legislative Immunity from Section 1983 Liability*

Section 1983 holds liable "every person" who deprives a citizen of her constitutional rights under a color of law. 42 U.S.C. § 1983. Although, on its face, the statute makes no mention of immunity, the courts have read into Section 1983 the doctrine of absolute legislative immunity. *See Rateree v. Rockett*, 852 F.2d 946, 948 (7th Cir.1988); 42 U.S.C. § 1983. The policy of governmental immunity is straightforward:

> When officials are threatened with personal liability for acts taken pursuant to their official duties, they may well be induced to act with excess of caution or otherwise to skew their decisions in ways that result in less than full fidelity to the objective and independent criteria that ought to guide their conduct. In this way, exposing government officials to the same legal hazards faced by other citizens may detract from the rule of law instead of contribute to it.

*Forrester v. White*, 484 U.S. 219, 223, 108 S.Ct. 538, 542, 98 L.Ed.2d 555 (1988).

█ While concerns about arbitrary legislative action may differ at the local, state and federal levels, the law in this circuit is clear that absolute legislative immunity extends to municipal legislators. *Rateree v. Rockett*, 852 F.2d 946, 949 (7th Cir.1988); *Reed v. Village of Shorewood*, 704 F.2d 943, 952 (7th Cir.1983). However, it is also clear that legislative immunity extends only to actions by legislators in their *legislative* capacities, not to any of their administrative or executive acts. *Rateree*, 852 F.2d at 950. The burden is on the government official; she must show that an exemption from personal liability is justified by public policy or by the principles of common law immunity in existence at the time of the enactment of Section 1983. *Rateree*, 852 F.2d at 950.

█ In this case, plaintiff brings Section 1983 actions for violations of procedural and substantive due process, equal protection, and impairment of contracts against five members of the Board in their individual and official capacities. The crux of these claims

is that plaintiff's constitutional rights were violated when the Village passed the Amending Ordinance and drew down the Letter of Credit. Defendants contend that the Board members are entitled to absolute immunity from Section 1983 liability because the targeted actions were either legislative acts taken in the Board members' official capacities, or actions in which the Board members did not participate. Plaintiff responds that: (1) the passing of the Amending Ordinance was not a legislative, but an administrative act; and (2) the Board members were involved in a conspiracy with Fuller and Fortney, the Village officials who initiated the drawing on the Letter of Credit. On both arguments, this court disagrees.

Plaintiff argues that the Board members' decision to pass the Amending Ordinance was an administrative act, not a legislative act, because the facts underlying the board's decision stemmed not from generalizations on policy or the state of affairs, but from plaintiff's actions. Plaintiff further contends that the ordinance "singles [it] out." These arguments ignore the plain language of the Amending Ordinance, which makes no mention of the plaintiff whatever. The amending provision has been added to the Village Code, is equally applicable to all subdivision developers in South Barrington, and creates Village policy on the renewal of letters of credit accompanying development agreements.[1] Thus, the Board members' decision to pass the Amending Ordinance was, in all relevant respects, a legislative act.

In further attempt to bypass legislative immunity, plaintiff articulates a conspiracy theory for the first time in its response brief. Plaintiff claims that the Board members enacted the Amending Ordinance as a pretext for the drawing on the Letter of credit and, consequently, should be accountable for the draw. Plaintiff's belated conspiracy allegations, even if accepted, cannot pierce the Board members' veil of legislative immunity. *See Rateree,* 852 F.2d at 951 ("In short, the doctrine of absolute immunity does limit the ability of those wronged by certain legislative acts to recover from individual legislators who have acted illegally."); *Thillens, Inc. v. Community Currency Exchange Assoc.,* 729 F.2d 1128, 1131 (7th Cir.1984), *cert. dismissed, Thillens, Inc. v. Wall,* 469 U.S. 976, 105 S.Ct. 375, 83 L.Ed.2d 342 (1984) (where complaint alleged that legislators accepted bribes in furtherance of conspiracy which culminated in passing of legislation, court found that voting on legislation was still a "purely legislative" action for which legislators were entitled to immunity). Accordingly, the court grants defendants' motion to dismiss the Board members from Counts I through IV.

### B. Legislative Immunity under Illinois Tort Immunity Act

■ Defendants argue that the Board members are also immune from plaintiff's state law claims against them—conversion (Count VI), money had.and received (Count VII), and defamation (Count IX)—because they arise out the Board members' legislative activities. Section 10/2–205 of the Illinois Tort Immunity Act states that "[a] public employee is not liable for an injury caused by his adoption of, or failure to adopt, an enactment or by his failure to enforce any law." 745 ILCS 10/2–205. The only alleged wrongful action by the Board members is their enactment of the Amending Ordinance. Plaintiff argues that Board members' knew that the ordinance would be used to draw on the Letter of Credit. Therefore, plaintiff continues, their decision to pass the ordinance was based on "corrupt or malicious motives" and, under *Madonna v. Giacobbe,* 190 Ill.App.3d 859, 138 Ill.Dec. 90, 546 N.E.2d 1145 (2nd Dist.1989), the legislators

---

1. Plaintiff's reliance on *Chicago Miracle Temple v. Fox,* 901 F.Supp. 1333 (N.D.Ill.1995), is misplaced. In that case, the village board voted to authorize the mayor to bid for certain property, which the city planned to use for a community youth center. The court determined that, while the board's decision to use the property for a youth center may have been a policy decision, its decision to purchase the property was "merely an administrative act in furtherance of that policy." *Id.* at 1344. In contrast, the Amending Ordinance in this case does not authorize Village officials to draw down on a specific letter of credit in furtherance of a separate village policy. Rather, the ordinance establishes village policy for all developers on the renewal of letters of credit.

are not entitled to immunity. This court disagrees.

As defendants correctly point out, in *Glenn v. City of Chicago*, 256 Ill.App.3d 825, 195 Ill.Dec. 380, 628 N.E.2d 844 (1st. Dist.1994), the Illinois Appellate Court, First District (in which this case arose), extended legislative immunity under 745 ILCS 10/2–205 to willful and wanton conduct and, thus, is inconsistent with the Second District's holding in *Madonna*. In *Glenn*, the Appellate Court reviewed various sections of the Tort Immunity Act to find that, where the legislature intended to exempt wilful and wanton conduct from the reach of an immunity, it expressly did so. The court went on to hold that, because the express language of 745 ILCS 10/2–205 is silent on any exception, the grant of immunity in that provision would extend to wilful and wanton conduct. *Id.* at 843, 195 Ill.Dec. 380, 628 N.E.2d 844. The Illinois Supreme Court recently applied the same analysis, albeit for a different section of the Tort Immunity Act, in *Barnett v. Zion Park District*, 171 Ill.2d 378, 216 Ill.Dec. 550, 665 N.E.2d 808 (1996):

> Where the legislature has chosen to limit an immunity to cover only negligence, it has unambiguously done so. *See* 745 ILCS 10/2–202, 2–210, 3–106, 3–109(c)(2), 4–105, 5–103(b), 5–106 (West 1990). Since the legislature omitted such a limitation from the plain language of Section 3–108, then the legislature must have intended to immunize liability for both negligence and wilful and wanton misconduct.

*Id.* at 391, 216 Ill.Dec. at 556–57, 665 N.E.2d at 814–15.

This court is required to follow the Illinois Supreme Court in interpreting Illinois law. Accordingly, based on the court's analysis in *Barnett* and the holding in *Glenn*, the Board members are entitled to immunity under 745 ILCS 10/2–105 for all state law claims against them, regardless of their motivation in enacting the Amending Ordinance. Defendants' motion to dismiss all state law claims (Counts VI, VII, IX) against the Board members is granted.[2]

## IV. QUALIFIED IMMUNITY

Under the doctrine of qualified immunity for Section 1983 liability, "public officials performing discretionary functions are protected against suits for damages unless their conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Doe v. Bobbitt*, 881 F.2d 510, 511 (7th Cir.1989), *cert denied*, 495 U.S. 956, 110 S.Ct. 2560, 109 L.Ed.2d 742 (1990) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 102 S.Ct. 2727, 73 L.Ed.2d 396 (1982)). The standard is an objective one, in which both facts and law are assessed. *Maxwell v. City of Indianapolis*, 998 F.2d 431, 436 (7th Cir.1993). The court must determine "whether the law was clear in relation to the specific facts confronting the public official when he or she acted." *Green v. Carlson*, 826 F.2d 647, 648 (7th Cir.1987). Because the doctrine of qualified immunity permits officials to escape both civil liability and the burdens of litigation, questions of immunity should be addressed in the earliest stage possible. *Scott v. Glumac*, 3 F.3d 163, 164 (7th Cir.1993).

The Seventh Circuit has established a two-part test for a ruling on qualified immunity: (1) whether the conduct constitutes a constitutional violation; and (2) whether the constitutional standards were clearly established at the time of the violation. *Young v. Murphy*, 90 F.3d 1225, 1234 (7th Cir.1996). In the instant case, plaintiff argues that defendants' drawing on the Letter of Credit violated clearly established constitutional law because the action was taken without any legal authority. The court rejects this argument. Defendants contend that the Village Subdivision Ordinance and the terms of the Letter of Credit authorized their actions. Whether such authority existed is the central

---

2. Plaintiff contends that the claim based on money had and received is contractual or quasi-contractual and that, under 745 ILCS 10/2–101, the Tort Immunity Act would not apply to such claims. Even assuming that this argument is valid, plaintiff's claim based on money had and received fails to plead facts connecting the Board members to the money at issue; the Village drew on the Letter of Credit and remains in possession of the money. Accordingly, Count VII is dismissed against the Board members.

question in this case, and will not be decided at this stage.

Moreover, even if authorization was lacking for the draw on the Letter of Credit, there is authority to suggest that improperly drawing on a letter of credit does not amount to a due process violation. *See A. Aiudi & Sons v. Town of Plainville,* 862 F.Supp. 737 (D.C.Conn.1994); *Krilich v. Village of Long Grove,* 1995 WL 628421, 1995 U.S. Dist. LEXIS 15736 (1995). Additionally, although there need not be a specific case on point for the law to be clearly established, *McDonald v. Haskins,* 966 F.2d 292, 295 (7th Cir.1992), the court declines to hold that constitutional law under the Equal Protection or Contracts Clause is clearly established with respect to the alleged wrongdoing in this case. Accordingly, the individual defendants, including those who have been granted legislative immunity, are entitled to qualified immunity on all counts, and defendants' motion to dismiss all counts against them is granted.

## V. DUE PROCESS

### A. *Procedural Due Process*

The Seventh Circuit has identified a two-step analysis for claims based on violations of procedural due process under the Fourteenth Amendment: first, the court must determine whether the plaintiff was deprived of a protected property interest; second, the court must determine what process was due. *Doherty v. City of Chicago,* 75 F.3d 318, 322 (7th Cir.1996).

 In Count I, plaintiff alleges that: (1) it has a protectable property interest in the Letter of Credit, the funds covered by the Letter of Credit, and the contract underlying the Letter of Credit;[3] and that (2) the defendants' calling of the Letter of Credit deprived it of its purported property inter-ests without due process of law. The parties have not cited, nor has this court found, any case in this circuit deciding whether an individual (including a corporate entity) has a protectable property interest in a letter of credit issued by a bank to a third-party beneficiary to secure the individual's performance on the contract underlying the letter of credit. The holding in *A. Aiudi & Sons v. Plainville,* 862 F.Supp. 737 (D.Conn.1994), however, is directly on point. On facts similar to those in the instant case, the district court held that a developer did not possess a protectable property right in a letter of credit issued by a bank to a town to secure the developer's performance on the underlying contract with the town. *Id.* at 742. The developer's interests in the letter of credit did not amount to a "legitimate claim of entitlement" under procedural due process standards. *Id.*

Plaintiff makes a zealous attempt to distinguish this case from *Aiudi.* Plaintiff alleges that, unlike the developer in *Aiudi,* it has completed all of the improvements on the Midland property. In addition, plaintiff claims that, in its continued course of dealing with the Village in relation to the Midlands property and the Letter of Credit, it obtained a property interest in the funds underlying the Letter of Credit. Amidst the morass of factual distinctions in its brief, however, plaintiff loses sight of the reasoning behind the court's decision in *Aiudi,* which is equally applicable here. In *Aiudi,* the court explained that the developer's allegations against the town focused on the propriety of the town's decision to draw on the letter of credit. *Id.* at 742. The resolution of that issue required an examination of the rights and obligations of the parties pursuant to the development contract underlying the letter of credit.[4] Based on these observations, the

---

**3.** Although a written development agreement was never executed, plaintiff's arguments assume that plaintiff had a development "contract" with the Village pursuant to the requirements of the Village subdivision code, which include the posting of the Letter of Credit.

**4.** "A letter of credit is a security device involving three separate contracts. The first is the contract between the beneficiary and the customer, ... which is the contract underlying the letter of credit. The second is between the customer and the bank, when the customer offers collateral in exchange for the bank's issuance of a letter of credit. The third contract is between the bank and the beneficiary, wherein the bank agrees to pay the beneficiary an amount stated when and if the beneficiary complies with the terms cited in the letter of credit.' " *Krilich v. Village of Long Grove,* 1995 WL 628421, *4, 1995 U.S. Dist. LEXIS 15736, at *8 (N.D.Ill. October 20, 1995).

court concluded that the plaintiff's claims amounted to no more than an action for breach of the underlying contract. Further, the underlying contract did not create a property interest under Second Circuit law because it did not confer benefits relating to the plaintiff's "status." *Id.* at 742 (citing *S & D Maintenance Co. v. Goldin,* 844 F.2d 962, 966 (2d Cir.1988)). As a result, the plaintiff was not entitled to the protections of procedural due process. *Id.* at 742–43.

Agreeing with the court's reasoning in *Aiudi,* this court holds that plaintiff does not have a protectable property interest in the Letter of Credit or the funds underlying it. The issue remains, however, whether, under the law in this circuit, plaintiff has a constitutionally protectable property right in the development contract underlying the Letter of Credit. It is undisputed that every contract between a municipality and a private party does not create a property interest. *See Mid–American Waste v. City of Gary,* 49 F.3d 286, 289–90 (7th Cir.1995). The line dividing "mere" contract rights and property rights is less clear: "If a contract creates rights specific enough to be enforced in state court by awards of damages or specific performance, then it creates a legitimate claim of entitlement; and if it creates such a claim, it is 'property.' " *Id.* at 288 (7th Cir.1995). This broad definition is not without limitation. The holder of a property right must have a secure, though not absolute, expectation of continued use in the property. *Glatt v. Chicago Park District,* 87 F.3d 190, 192 (7th Cir.1996). While all property rights have qualifications, at some point, the qualifications may become so numerous and open-ended that the holder's interest is no longer secure. *Id.* at 192.

In the instant case, the development agreement between the parties, written only in the form of the Subdivision Ordinance, permitted plaintiff to develop and install improvements on the Midlands property, conditioned upon the posting of a letter of credit. In these respects, the agreement closely resembles the development contract in *Aiudi.* Plaintiff contends that all improvements were finished and that it had no obligation to renew the Letter of Credit. Defendants allege that because they never formally "accepted" the improvements as required under the Village ordinance, they had a right to draw on the Letter. Plaintiff responds that, even if formal acceptance of the improvements was required, the Village constructively accepted them through its stipulations in the state disconnection litigation and by converting the Letter of Credit from a performance bond into a maintenance bond.

On facts similar to these, Judge Hart, in *Krilich v. Village of Long Grove,* 1995 WL 628421, *3, 1995 U.S. Dist. LEXIS 15736, at *8 (Oct. 20, 1995 N.D. Ill.1995), "doubted" that a development contract between a private entity and a municipality underlying a letter of credit could create a constitutionally protectable property right. He went on to hold that, even if a property right existed, the developer's opportunity to proceed in state court was all the process that was "due." *Id.* A letter of credit, Judge Hart explained, is a "pay now, argue later" arrangement; a beneficiary's receipt of letter of credit funds prior to any hearing is simply the nature of the letter of credit. Because the developer had voluntarily agreed to the arrangement, it could not later complain that it was not afforded a pre-deprivation hearing. *Id.*

This court holds that plaintiff's rights to the Letter of Credit funds under the development contract do not constitute a protectable property interest. Plaintiff's expectations in having the funds returned are qualified by various requirements in the development contract and the Village Subdivision Ordinance; they are not so "secure" as to create an entitlement. *See Glatt,* 87 F.3d at 192. Moreover, following Judge Hart's reasoning, the court finds that, even if a property right exists, due process is satisfied by plaintiff's ability to litigate the issue in state court.

Plaintiff's invocation of the principles in *Parratt v. Taylor,* 451 U.S. 527, 101 S.Ct. 1908, 68 L.Ed.2d 420 (1981), is of no avail. *Parratt* held that, for random and unauthorized acts of state actors, adequate state post-deprivation procedures satisfy procedural due process. *Id.* at 539–544, 101 S.Ct. at 1914–1917. Because the court holds that plaintiff's rights in the development agree-

ments are not property rights, *Parratt* is not implicated, and its "random and unauthorized" analysis is not applicable. Further, even assuming that a property right exists, a pre-deprivation hearing would not have been required. *See Mid–American Waste,* 49 F.3d at 291 ("[When] the issue is the meaning of a commercial contract [between a private entity and the state], a prior hearing is unnecessary, and the opportunity to litigate in state court is all the process that is 'due' to determine whether the state kept its promise."). Accordingly, defendants' motion to dismiss Count I is granted.

### B. *Substantive Due Process*

"Substantive due process is an area of law 'famous for its controversy, and not known for its simplicity.'" *DeBlasio v. Zoning Bd. of Adjustment,* 53 F.3d 592, 597 (3rd Cir. 1995), *cert. denied,* —— U.S. ——, 116 S.Ct. 352, 133 L.Ed.2d 247 (1995). While procedural due process focuses on the proper notice and hearing standards for deprivations of property rights or liberty interests, substantive due process addresses whether the alleged unlawful conduct itself was so "arbitrary and irrational" that it violated plaintiff's constitutional rights. *Doherty,* 75 F.3d at 325. To claim a substantive due process violation in this circuit, a plaintiff must allege that: (1) it was subjected to "arbitrary and irrational" conduct by the state; and (2) either state law remedies are inadequate or an independent constitutional violation exists. *Id.* at 325.

■■■■ Plaintiff's substantive due process claim rests on the same facts as its procedural due process claim. Plaintiff contends that the defendants' enactment of the Amending Ordinance and draw on the Letter of Credit were arbitrary, irrational, and vindictive acts because: (1) plaintiff has completed all improvements under the development contract; (2) defendants have refunded and returned letters of credit to other developers who have completed the installation of improvements; (3) defendants lost the disconnection litigation in state court; (4) defendants lost the $250,000 in its earnest money deposit under the Settlement Agreement; (5) when defendants drew on the Letter of Credit, the

Midlands property was no longer within the Village limits. As explained below, plaintiff has properly alleged an equal protection violation on the same facts. Thus, plaintiff's section 1983 substantive due process claim, while not highly detailed, satisfies the notice-pleading requirements under Rule 8 because it alleges an independent constitutional violation arising from the Village's arbitrary and irrational conduct. Defendants' motion to dismiss Count II is denied.

### VI. EQUAL PROTECTION

■■■■ This circuit has recognized at least three ways in which a plaintiff may successfully allege a violation of her equal protection rights: (1) plaintiff was singled out for unequal treatment because of her membership in a vulnerable group (based on race, gender, etc.); (2) plaintiff was subjected to laws or policies that make irrational distinctions; or (3) plaintiff endured an "orchestrated campaign of official harassment directed against [her] out of sheer malice." *Esmail v. Macrane,* 53 F.3d 176, 178 (7th Cir.1995). In Count III of its complaint, plaintiff takes the third approach. It alleges that defendants' enactment of the Amending Ordinance and draw on the Letter of Credit were vindictive acts, taken in retaliation "for [plaintiff's] successful efforts to disconnect the Disconnection Property, and in an illegal effort to recoup the Earnest Money Deposit [$250,-000]." Additionally, plaintiff alleges that defendants have refunded and returned the letters of credit to other developers who have completed improvements on their properties. These statements satisfy the elements of an equal protection violation under the law in this circuit. Accordingly, the court denies defendants' motion to dismiss Count III.

### VII. IMPAIRMENT OF CONTRACTS

■■■■ The contracts clause of the United States Constitution precludes a state, including its subdivisions, from impairing the obligation of contracts. U.S. Const. art. I, Section 10, cl. 1. When the state is a party to the contract allegedly impaired by its own action, the line between claims for common law breach of contract and constitutional impairment of contract is not easily drawn. In

*Horwitz–Matthews v. City of Chicago,* 78 F.3d 1248, 1251 (7th Cir.1996), Judge Posner explained that the state does not unconstitutionally impair a contract to which it is party if its action—typically, the enactment of a law—leaves the promisee with a remedy for breach of contract. Put another way, a contract clause violation will not lie where the state cannot use the state action as a complete defense to a breach of contract suit. *Id.* at 1251–52.

Here, plaintiff contends that it was party to three contracts—the development contract with the Village, the Letter of Credit arrangement with the bank, and the Settlement Agreement with the Village—and that the defendants' enactment of the Amending Ordinance impaired its obligation under these contracts. The first and third of the contracts include the Village as a party, and the second the contract with the bank—is premised on the first and on the letter of credit arrangement between the Village and the bank. Defendants now contend that the Amending Ordinance does not apply to plaintiff's Letter of Credit and, thus, will not bar any breach of contract claims plaintiff may have under state law.[5] Accordingly, because plaintiff has a remedy against the Village for breach of contract, defendant's motion to dismiss Count IV is granted.

## VIII. STATE LAW CLAIMS

### A. *Fraud*

■ Count V alleges common law fraud against defendants Fuller and Fortney. A claim of fraudulent misrepresentation ("fraud") under Illinois law requires: (1) a "false statement of material fact; (2) known or believed to be false by the party making it; (3) intent to induce the other party to act; (4) action by the other party in reliance on the truth of the statement," where the party has a right to rely on the statement; and (5) "damage to the other party resulting from such reliance." *Soules v. General Motors Corp.,* 79 Ill.2d 282, 37 Ill.Dec. 597, 402 N.E.2d 599 (1980). Plaintiff argues that Fuller directed Fortney to submit a signed

certificate to the Bank which: (1) falsely stated that plaintiff had not complied with the terms of the Subdivision Ordinance; (2) which Fortney and Fuller knew or should have known was false; (3) which was presented to the Bank in order to receive the Letter of Credit funds; (4) which was relied on by the Bank, as an agent of defendant, in paying on defendants' demand; and (5) which resulted in a loss of approximately $250,000 to plaintiff.

■ Defendants argue that plaintiff's action for fraud fails because: (1) the Certificate sets forth a statement of opinion, not fact; and (2) plaintiff has not plead fraud with specificity as required by Rule 9(b). On both arguments, the court disagrees.

■ Ordinarily, a representation of opinion or a promise of future action does not constitute actionable fraud under Illinois law. *See Continental Bank, N.A. v. Meyer,* 10 F.3d 1293, 1298 (7th Cir.1993); *Marino v. United Bank of Illinois,* 137 Ill.App.3d 523, 527, 92 Ill.Dec. 204, 484 N.E.2d 935 (2nd Dist.1985); *Kusiciel v. LaSalle National Bank,* 106 Ill.App.3d 333, 334, 62 Ill.Dec. 245, 435 N.E.2d 1217 (1st Dist.1982). "A representation is one of opinion rather than fact if it only expresses the speaker's belief, without certainty, as to the existence of a [preexistent or present] fact." *Marino,* 137 Ill. App.3d at 523, 92 Ill.Dec. 204, 484 N.E.2d 935. (citing Restatement (Second) of Torts section 538A (1977)); *see also Continental Bank,* 10 F.3d at 1298. However, the fact/opinion distinction is not always clear; it depends on the circumstances in each case. *Continental Bank,* 10 F.3d at 1298; *Kusiciel,* 106 Ill.App.3d at 335, 62 Ill.Dec. 245, 435 N.E.2d 1217.

Here, defendants argue that Fortney's certification that plaintiff had failed to comply with the Subdivision Ordinance was an opinion of law; specifically, it was "a prediction of what a court might conclude about the legal consequences of [plaintiff's] conduct." The Bank, however, interpreted the certificate as a statement of fact and, under the terms of

---

5. Any assertions defendant may have made previously about the legal effect of the Amending Ordinance—while, perhaps, relevant to plaintiff's

arguments on pretext in other counts—are not applicable to the Contracts Clause claims in Count IV.

the Letter of Credit, was required to pay defendants upon the presentment of such a statement. Fortney did not qualify the statement in any way that would alter the Bank's obligation to pay. Accordingly, the court finds that Fortney's submission was a statement of fact, and is actionable in a claim for fraud.

Plaintiff's claim also meets the criteria under Rule 9(b). Although Rule 9(b) requires plaintiffs to plead the "circumstances constituting fraud" with particularity, this requirement is satisfied where the complaint includes the time, place, and contents of the alleged fraud. *Linder v. Brinckman,* 1993 WL 294005, at *2 (N.D.Ill. Aug.4, 1993). Plaintiff's complaint provides these details. Rule 9 also requires plaintiff to prove scienter generally. Plaintiff alleges that Fortney and Fuller knew or should have known that plaintiff had satisfied the provisions in the Subdivision Ordinance because, in part, the Village acknowledged that plaintiff had substantially completed all improvements on the Midlands Property during the disconnection litigation. These allegations are sufficient under Rule 9(b). Defendants' motion to dismiss Count V is denied.

### B. *Conversion*

Count VI alleges a claim for conversion based on defendants' drawing on the Letter of Credit. Under Illinois law, a proper complaint for conversion must allege: (1) unauthorized and wrongful assumption of control, dominion, or ownership by defendant over plaintiff's personalty; (2) plaintiff's right in property; (3) plaintiff's right to immediate possession of property, absolute and unconditionally; and (4) demand for possession of property. *General Motors Corp. v. Douglass,* 206 Ill.App.3d 881, 886, 151 Ill.Dec. 822, 565 N.E.2d 93 (1st Dist.1990). Plaintiff's claim for conversion fails because it misunderstands the nature of a letter of credit transaction. As explained above, a standard letter of credit transaction involves three separate and independent contracts. *See infra,* note 4. It is essentially a "pay now, argue later" arrangement. *Krilich v. Village of Long Grove,* 1995 WL 628421, *3, 1995 U.S. Dist. LEXIS 15736, at *8 (Oct. 20, 1995 N.D.

Ill.1995). A beneficiary (the Village) may receive letter of credit funds upon the presentation proper documents to the issuer (the Bank). The customer (plaintiff) may challenge any payment made by the issuer to the beneficiary at a later date. The customer does not have an immediate and unconditional right to the letter of credit funds. Accordingly, because plaintiff had no immediate, unconditional right to the funds, the court grants defendants' motion to dismiss Count VI.

### C. *Money Had and Received*

Plaintiff argues that defendants' drawing on the Letter of Credit and its refusal to "return" the funds to plaintiff constitutes an action for money had and received. To state a claim for money had and received under Illinois law, a plaintiff must allege that: (1) she was compelled to pay money to defendant; (2) defendant had no legal right to demand money; and (3) payment was necessary in order to avoid an injury to her business, person, or property. *Butitta v. First Mortgage Corp.,* 218 Ill. App.3d 12, 15, 160 Ill.Dec. 937, 578 N.E.2d 116 (1st Dist.1991). Plaintiff's claim fails on all elements.

First, the Bank, and not plaintiff, was compelled to pay money to defendant. Second, the Village had a right under the Letter of Credit—a contract between the Village and the Bank—to draw its funds upon the presentation of certain documents to the Bank. There is no dispute that the Certificate, on its face, complied with the requirements in the Letter of Credit. Arguments over the truth of the statements in those documents relate to the performance on the underlying contract between plaintiff and defendant. Third, any injury that would result from the Bank's failure to pay on the Village's demand would fall on the Bank, not on plaintiff. Under the terms of the Letter of Credit, the Bank had a legal obligation to pay the Village upon its presentation of proper documents, and risked liability for failing to do so. Because plaintiff has failed to state a claim for money had and received, defendants' motion to dismiss Count VII is granted.

## D. *Breach of Warranty*

 In Count VIII, plaintiff alleges that the Village, as beneficiary to the Letter of Credit, breached its warranty of presentment under section 5–111 of the U.C.C. by presenting a failed to perform one or more of the provisions of the Subdivision Ordinance or the agreements executed pursuant thereto. Section 5–111 of the Uniform Commercial Code provides, in part:

> Unless otherwise agreed the beneficiary by transferring or presenting a documentary draft or demand for payment warrants to all interested parties that the necessary conditions of the credit have been complied with.

810 ILCS 5/5–111(1) (1996).

In Illinois, the courts have interpreted this section to provide a warranty by the beneficiary that the documents *on their face* comply with the letter of credit, and that none of the exceptions in section 5–114(2) apply.[6] *Banco Del Estado v. Navistar International Transportation Corp.*, 942 F.Supp. 1176, 1179–80 (N.D.Ill.1996); *Janivo Holding, B.V. v. Continental Bank*, 859 F.Supp. 316, 321 (N.D.Ill.1994) (citing *First Arlington Nat'l Bank v. Stathis*, 115 Ill.App.3d 403, 71 Ill. Dec. 145, 450 N.E.2d 833, 840 (1983)). Significantly, Section 5–114(2) does not provide a warranty for the *truth* of the statements in the documents, nor does it provide for a cause of action based on noncompliance with the underlying contract governing the letter of credit. *Janivo*, 859 F.Supp. at 321 ("[T]o the extent [the account customer] has been wronged, [it] has its own remedy based on the underlying agreement.").

In the instant case, the express terms of the Letter of Credit give the Village the right to draw on the Letter of Credit upon submission of a signed certificate by the Village Clerk, Fortney, stating that plaintiff "has failed to perform one or more of the provisions of the Ordinance for the Subdivision and Platting of Land and Providing for Installation of Subdivision Improvements, No. 0–77–57A and the agreements executed pursuant to this Ordinance." It is undisputed that the Village presented the Certificate to the Bank that, on its face, met these requirements. Section 5–111(1) warrants no more. *Janivo*, 859 F.Supp. at 321. Because plaintiff has failed to state a claim for breach of warranty, defendants' motion to dismiss Count VIII is granted.

## E. *Defamation*

 Count IX alleges libel per se against all defendants based, again, on the Fortney's presentment of a Certificate to the Bank stating falsely that plaintiff had failed to perform one or more provisions of the Subdivision Ordinance. The Village is immune from injury caused by any action of its employees that amounts to libel or slander. 745 ILCS 10/2–107. Fuller is also entitled to absolute immunity because any statements he may have made about the Letter of Credit and any authorization for the drawing on the Letter of Credit were done in his official capacity as Village President. *Meyer v. McKeown*, 266 Ill.App.3d 324, 326, 204 Ill. Dec. 593, 641 N.E.2d 1212 (3rd Dist.1994) (noting absolute privilege for statements made by executive officers in course of their official duties). Further, under the terms of the Letter of Credit, Fortney's duties included presenting a certificate to the Bank in order to draw on the Letter of Credit. Thus, Fortney is also entitled to official immunity for her actions in drawing on the Letter of Credit.

 Notwithstanding defendants' immunity on Count IX, plaintiff fails to plead a claim for libel per se. An action for libel per se requires "a serious charge of incapacity or

---

**6.** Section 5–114 states, in pertinent part:

> (2) Unless otherwise agreed when documents appear on their face to comply with the terms of a credit but a required document does not in fact conform to the warranties made on negotiation or transfer of a document of title (Section 7–507) or of a certificated security (Section 8–306) or is forged or fraudulent or there is fraud in the transaction:
>
> (b) ... an issuer acting in good faith may honor the draft or demand for payment despite notification from the customer of fraud, forgery or other defect not apparent on the face of the documents but a court of appropriate jurisdiction may enjoin such honor.

**1300**

misconduct in words so obviously and naturally hurtful that proof of their injurious character is unnecessary." *Springer v. Harwig,* 94 Ill.App.3d 281, 283, 49 Ill.Dec. 850, 418 N.E.2d 870 (1st Dist.1981). The statement must impute to the plaintiff: "(1) the commission of a crime; (2) infection of another with a loathsome disease; (3) unfitness or want of integrity in performing the duties of an office or employment; or (4) lack of ability in his business, trade, or profession." *Id.* The certificate submitted by Fortney to the Bank stated that plaintiff failed to comply with the Subdivision Ordinance, which is essentially an allegation that plaintiff breached its development contract with the Village. The court does not find this statement to be a "serious charge of incapacity or misconduct" to support an action for libel per se. *See Springer,* 94 Ill.App.3d at 283–284, 49 Ill.Dec. 850, 418 N.E.2d 870 (statement that village filed lawsuit against developer for its failure to perform under agreement did not, by itself, charge developer with lack of ability or integrity in his business). *Cf. Quality Granite Construction Co. v. Hurst–Rosche Engineers,* 261 Ill.App.3d 21, 26, 198 Ill.Dec. 528, 632 N.E.2d 1139 (5th Dist.1994) (finding libel per se where letter accused plaintiff of professional incompetence, not simply breach of contract). Accordingly, defendants' motion to dismiss Count IX is granted.

### CONCLUSION

For the reasons set forth above, the court grants defendants' motion to dismiss with respect to: (1) all counts against the individual defendants in their official capacities; (2) all counts against the Village Board members; (3) Counts I through IV against all individual defendants; (4) Counts I and IV against the Village; (5) Counts VI through IX against all defendants.

Defendants' motion to dismiss is denied with respect to: (1) Counts II and III against the Village; (2) Count V against defendants Fuller and Fortney. Plaintiffs are directed to file an amended complaint in accordance with this opinion by on or before January 23, 1997; defendants should file their answer on or before February 13, 1997. This matter is set for a report on status February 20, 1997, at 9:00 a.m., at which time the parties are directed to propose a definitive discovery plan.