Roger **BOOKER** and Mildred Booker, Individually and as Parents and Guardians of Minor Daughter, Elisabeth, Plaintiffs,

v.

**BOARD OF EDUCATION, BALDWINSVILLE CENTRAL SCHOOL DISTRICT; Theodore Gilkey, in his official capacity as Deputy Superintendent of Baldwinsville Central School District; Jeanne Race, in her**

official capacity as Deputy Superintendent of Baldwinsville Central School District; Irving Gray, in his official capacity as Principal of Durgee Junior High School; Joseph Lazarski, in his official capacity as Principal of Donald Ray Middle School; Karen Donahue, in her official capacity as Assistant Principal at Donald Ray Middle School; Andrea Frascatore, in her official capacity as teacher at Durgee Junior High School, Defendants,

No. 00–CV–443.

United States District Court,
N.D. New York.

Dec. 18, 2002.

E. Carolyn Scott, Esq., Rochester, NY, for Plaintiffs.

O'Hara & O'Connell, Syacuse, NY (James P. Evans, Esq., of Counsel), for Defendants.

MUNSON, Senior District Judge.

## BACKGROUND

During the period the events in the instant case took place, Elisabeth Booker ("Elisabeth") resided with her parents and guardians, plaintiffs Roger and Mildred Booker, ("the Bookers")in the Baldwinsville, N.Y. Central School District (the "District"). In the 1998–99 school year, Elisabeth attended the District's Ray Middle School, and in 1999–00, she finished the eighth grade at Durgee Junior High School.

The Bookers instituted this lawsuit naming as defendants, the District, and in their official capacities, Dr. Gilkey, the District's chief executive officer; Jeanne Race, the District's assistant superintendent until November 2001; Irving Grey ("Grey"), principal of Durgee Middle School; Joseph Lazarski ("Lazarski"), principal of Ray Middle School: and Karen Donahue ("Donahue"), Ray Middle school assistant principal in 1998–99. The complaint alleges, *inter alia,* that these defendants, failed to implement proper disciplinary proceedings against certain classmates who Elisa-beth contends harassed her. The complaint also alleges that Elisabeth's math teacher, Andrea Frascatore, ("Frascatore") violated Elisabeth's civil rights by assigning her to sit in a study carrel during class periods because she repeatedly talked in class.

The relief sought is compensatory and punitive damages, costs and attorney fees.

The complaint asserts that the action arises under 42 U.S.C. § 1981 and § 1983 and 42 U.S.C.2000d.

Currently before the court is defendants' motion for summary judgment dismissing the complaint pursuant to Rule 56 of the Federal Rules of Civil Procedure. Plaintiffs have entered opposition to this motion.

## DISCUSSION

Rule 56 of the Federal Rules of Civil Procedure permits summary judgment where the evidence demonstrates that "there is no genuine issue of any material fact and the moving party is entitled to judgment as a matter of law." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247, 106 S.Ct. 2505, 2509, 91 L.Ed.2d 202 (1986). Summary judgment is properly regarded as an integral part of the Federal Rules as a whole, which are designed to "secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett,* 477 U.S. 317, 327, 106 S.Ct. 2548, 2554, 91 L.Ed.2d 265 (1986)(quoting Federal Rule of Civil Procedure 1). In determining whether there is a genuine issue of material fact a court must resolve all ambiguities and draw inferences against the moving party. *United States v. Diebold,* 369 U.S. 654, 655, 82 S.Ct. 993, 994, 8 L.Ed.2d 176 (1962)(*per curiam* ). An issue of credibility is insufficient to preclude the granting of summary judgment. Neither side can rely on conclusory allegations or statements in affida-

vits. The disputed issue of fact must be supported by evidence that would allow a "rational trier of fact to find for the non-moving party." *Matsushita Electric Industries Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Unsupported allegations will not suffice to create a triable issue of fact. *Goenaga v. March of Dimes Birth Defects Foundation*, 51 F.3d 14, 18 (2d Cir.1995). Nor will factual disputes that are irrelevant to the disposition of the suit under governing law preclude any entry of summary judgment. *Anderson*, 477 U.S. at 247, 106 S.Ct. at 2509.

*Plaintiffs' claims of wrongdoing:*

On May 6, 1999, teacher Donahue was supervising the school lunch period when Elisabeth and her classmate, Felicia Briggs ("Felicia") approached her at a fast pace. Elisabeth told the supervisor that Felicia had hit her in the back with her hand. Felicia claims she had tripped and fell into Elisabeth while returning her lunch tray. The supervisor took the two students to her office for further discussion and counseled them on dispute resolution. After talking with the students, the supervisor decided that the incident was a misunderstanding, counseled them both about dispute resolution and directed them to return to class. While proceeding to class, they became engaged in an altercation. Supervisor Donahue investigated the fracas, and took statements from both Elisabeth, Felicia and witnesses.

Elisabeth acknowledged in her statement that she had started the altercation. Felicia concurred with this, and stated that the initial assault was unprovoked. Witnesses' statements also indicate that Elisabeth was the instigator. Donahue then referred the students to the principal for disciplinary action. Upon returning home, Elisabeth told her mother about the incident. She claimed she had some back discomfort from Felicia falling into her, but said it did not really hurt until she got home. Her mother decided that she needed medical care and drove Elisabeth to the University Hospital emergency room where she was examined and released, but first drove to the school seeking a review of the incident. Mrs. Booker then reported the incident to the police claiming that her daughter had been assaulted. The police investigated the matter but decided not to take any action.

Mrs. Booker wrote several letters to the District about the altercation and complaining about how it was handled. She claimed that an unprovoked Felicia had intentionally assaulted Elisabeth, that supervisor Donahue did not provide her with medical care, that the whole occurrence was based on race, and that the District had some kind of racial animus towards Elisabeth because Felicia was not punished.

After the May 6, 1999, clash with Felicia, Elisabeth reported other instances of alleged racial harassment.

In the autumn of the 1999–00 school year, her science class was discussing history. During the discussion, she contends that another student, Trevor Albro ("Albro"), remarked to her about what chores he would give her if she was his slave. When she reported Albro's remarks to the teacher, Mr. Seabury, he assigned her to a seat on the opposite side of the classroom. She also states that she reported the remarks to her principal Gray. Gray does not recall the matter. Mr. Seabury does not remember the specific remarks being reported to him, but when Elisabeth complained of getting general annoyances from Albro, he did give Elisabeth the option to sit near a friend or in any other seat of her choosing.

In the same time period, Elisabeth complained to principal Gray that a friend told her that Felicia had written a note about Elisabeth allegedly containing racially offensive terms. She claimed the note was passed around a cafeteria table in the lunch room. Gray had all of the students present at that cafeteria table interviewed, but none had seen or knew of the note's existence. Felicia denied that there was such a note. Finding no information except for Elisabeth's second hand, uncorroborated allegation to verify the presence of the note, Gray had no basis to chastise Felicia.

On December 16, 1999, Elisabeth informed Durkee assistant principal, Mrs. Gridley–Pelky, that Albro had stolen her purse. The assistant principal immediately investigated the matter and found that Albro had taken the purse and secreted it on a bus. The purse and its entire contents were recovered, and principal Gray assigned Albro to two days of in-school suspension.

Also in December 1999, defendant Frascatore conducted a math lab class which Elisabeth attended. The class consisted of classroom work and computer instruction. Because Elisabeth was talking during the class, Frascatore asked her three times to change her seat. When she did not comply with these requests, Frascatore assigned Elisabeth to sit in a study carrel in the front of the classroom. She spent limited time there, however, because she often worked on the computer outside of the carrel. After the winter break, although Elisabeth resisted it, Frascatore moved her back to a regular desk because she felt that she was using the carrel to do class work other than math. Frascatore had assigned five other students to the carrel over the years, to assist them in concentrating on the math work at hand.

Elisabeth was the only minority student assigned there during that time period.

When Mrs. Booker became aware of Elisabeth's carrel assignment after the winter break, she telephoned Frascatore and asked why her daughter was placed there. The teacher advised her that it was used because Elizabeth was talking in class. She then complained to Gray and demanded to see the carrel. When she saw it, she directed that Elisabeth no longer be assigned to sit in it, but, by that time, she had already been reassigned to a regular classroom seat.

On January 26, 2000, Elisabeth reported that classmate, Nick Palocy, had referred to her as a "black bitch" in Spanish class. The instructor, Ms. Belge, immediately notified Gray of this claim. He notified Mrs. Booker and started an investigation. Students sitting near Elisabeth in the class were questioned, but none heard words similar to what was supposedly said by Nick Palocy. One did say he heard Palocy call Elisabeth "stupid," and Palocy admitted he had told her to "shut up, stupid."

Mrs. Booker called the Baldwinsville Police Department and had a meeting arranged at the school. After reviewing the event, the police decided not to make any arrests. Mrs. Booker became upset at this decision and would not permit Gray to speak to Elisabeth any further about what had allegedly taken place. Gray stated that he could not discipline any students because all that any of the witness heard was Nick Palocy call Elisabeth "Stupid."

*Mediations Undertaken*

In 1998, Mrs. Booker had maintained that Elisabeth was not getting satisfactory assistance from her math teacher. The District immediately investigated the matter and found the accusations unsupported. Thereupon, in an effort to reach joint understanding with Mrs. Booker, the District agreed to mediate her concerns with the

aid of the Onondaga County Human Rights Commission. The mediation concluded with an agreement, but Mrs. Booker continued to express displeasure. A second mediation between the parties was then scheduled with the assistance of the New Justice Mediation Center. Another agreement was reached on January 27, 1999. The new agreement provided that the District would place Elisabeth with a new math teacher, see that she got remedial help and make certain that the new math teacher communicated with Mrs. Booker. Any new concerns were to be made in writing.

After the altercation between Elisabeth and Felicia, Mrs. Booker filed a complaint with the New York State Division of Human Rights complaining about how it was handled by the District. The District denied the complaint, but entered into a colloquy with her mediated by the Human Rights Division. The attempt subsequently miscarried because, in the opinion of the District, Mrs. Booker acted unreasonably.

In January 2000, Mrs. Booker made a complaint with the United States Department of Education, Office of Civil Rights ("ORC"). The complaint pertained to the May incident and contended that it was an unprovoked assault upon Elizabeth that caused her a serious personal injury. The ORC looked into the matter and proposed that the District enter into a voluntary resolution agreement to settle the complaint. The District followed the suggestion and agreed to review its disciplinary policies and revise them if necessary; conduct in-service training on racial harassment for those involved in the disciplinary process; and to offer to meet with the Bookers regarding disciplinary procedures. The District found that it did not have to revise its disciplinary policies, conducted the in-service training and offered to meet with the Bookers about the disci-

plinary procedures. The Bookers turned down the District's offer.

After the instant action had been commenced, the Booker's filed a complaint containing essentially the same allegations in the New York State Supreme Court. Due to the fact that a similar lawsuit was also extant, the State Court dismissed the complaint.

Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, states: No person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance.

*This lawsuit:*

 As a threshold matter, Title VI claims cannot be asserted against an individual defendant for the same reason they cannot be asserted under Title IX— the individual is not the recipient of federal funding. Consequently, the claim, even if viable, will have to be dismissed against the individual defendants in this action. Title VI covers only those situations where "federal funding is given to a non-federal entity which, in turn provides financial assistance to the ultimate beneficiary." *Soberal–Perez v. Heckler,* 717 F.2d 36, 38 (2d Cir.1983); *J. & L. Parking Corp. v. United States,* 834 F.Supp. 99, 104–05 (S.D.N.Y. 1993), aff'd, 23 F.3d 397 (2d Cir.1994)(Table). Plaintiffs have not alleged in their amended complaint that the District is a recipient of federal financial aid. Plaintiffs, thus, have failed to state a claim for relief under Title VI against the District. Therefore, the Title VI claim is dismissed with leave to re-plead in accordance with the above noted requirements.

 Plaintiffs have also made claims asserting violations of 42 U.S.C. § 1983 and § 1981. A party who has a cause of

action based on § 1983 may sue a "person" who, acting under color of state statute, custom or policy violates the individual's constitutional rights. Local governments may be sued directly under § 1983 where the alleged unconstitutional action is part of an official policy or custom of a government agency *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658, 98 S.Ct. 2018, 2035, 56 L.Ed.2d 611 (1978). For a municipality to be liable for the actions of its employees or agents, they must be executing a governmental policy or custom, "whether made by its lawmakers or those whose edicts or acts are fairly said to represent official policy." *Id.* at 694, 98 S.Ct. at 2027. For purposes of § 1983, school districts are considered to be local governments and are subject to similar liability as local governments under *Monell. Id.* at 696–97, 98 S.Ct. at 2039. .

■ In *Jett v. Dallas Independent School District*, 491 U.S. 701, 109 S.Ct. 2702, 105 L.Ed.2d 598 (1989), the Supreme Court held that municipal actors were not subject to liability under § 1981 and that § 1983 provides the exclusive remedy against municipalities for violations § 1981 rights. *Id.* at 732, 109 S.Ct. at 2721. In 1991, Congress answered by amending § 1981 to include a provision that, "The rights protected by this section are protected against impairment by non-governmental discrimination and impairment under color of State law." 42 U.S.C. § 1981(c). Where defendants to a lawsuit are state actors § 1981 claims merge into § 1983 claims. Because § 1981 provides no broader remedy against a state actor than § 1983 and since they merge into one another, the court need provide no further analysis on this point. The § 1981 claim is treated exactly like the § 1983 claim, becomes merged into it and is considered as a single claim. *Pearson v. Macon–Bibb*

*County Hospital Authority*, 952 F.2d 1274, 1278 n. 3 (11th Cir.1992).

■ In *Kentucky v. Graham*, 473 U.S. 159, 105 S.Ct. 3099, 87 L.Ed.2d 114 (1985), the Supreme Court ruled that in order for an individual to be liable in his or her official capacity under § 1983, the liability of the governmental agency must be established under *Monell. Graham*, 473 U.S. at 166 n. 14, 105 S.Ct. at 3106 n. 14. On the merits, to establish personal liability in a § 1983 action, it is enough to show that the official, acting under color of state law, caused the deprivation of a federal right. A plaintiff need not demonstrate a connection to a government policy or custom that is required under *Monell. Monroe v. Pape*, 365 U.S. 167, 81 S.Ct. 473, 5 L.Ed.2d 492 (1961). More is required in an official capacity suit action, however, for a governmental entity is liable under § 1983 only when the entity is a " 'moving force' " behind the deprivation, *Polk County v. Dodson*, 454 U.S. 312, 326, 102 S.Ct. 445, 454, 70 L.Ed.2d 509 (1981)(quoting *Monell*, 436 U.S. at 694, 98 S.Ct. at 2037). Based upon this distinction, district courts have dismissed official capacity claims against individuals as redundant or unnecessary where *Monell* claims are asserted against an entity. *Union Pacific Railroad v. Village of South Barrington*, 958 F.Supp. 1285 (N.D.Ill.1997). The real party in interest in an official capacity suit is the governmental entity and not the named official. In this case, because plaintiffs bring only official capacity claims against the individual defendants and a *Monell* type claim against the District, they are redundant to the the claims against the District, and the court dismisses plaintiffs' official capacity claims against the individual defendants.

■ The District's policy concerning the handling of allegations racial harassment is to investigate the claim and, when

the investigation shows the harassment took place, to discipline the culprits. (Def.'s Ex. N, Dep. of Gray, pp. 12–14, 37–40 and Def.'s Ex. V, Dep. of Gilkey, pp. 45–46). Due process for accused parties is observed and the District is legally required to prove any disciplinary charges with competent and substantial evidence. Education Law § 3214. If, after investigating the incident, the District finds the accusations to be substantiated, disciplinary measures are imposed. If the charges are determined to be unsubstantiated, no discipline may be imposed, and the parties are counseled regarding proper interracial relationships.

The District's policy is consistent with the requirements of New York Education Law § 3214, accompanying regulations and decisions of the Commissioner of Education. See, *Appeal of Duffy*, 36 ED. Dept. Rep. 256 (1996); *Davis v. Monroe County Board of Education*, 526 U.S. 629, 648–50, 119 S.Ct. 1661, 1673, 143 L.Ed.2d 839 (1999).

The District policy protects the students and their rights and affords the accused student and parents an opportunity to appear and discuss the conduct under review. The procedure is designed to assure claims of racial harassment are investigated and receive an accurate determination. The District is compelled to secure the rights of every student, including the ones accused in this case. The record shows that when the District's investigation disclosed that Elisabeth's allegations were proved, disciplinary action against the offender was quickly taken. It also appears that the District's actions discouraged harassment

The court finds that plaintiffs' argument does not support a finding of liability against the District for deliberate conduct through a policy or custom which caused a deprivation of the parents' or Elisabeth's civil rights. The official policy of the District is not to illegally discriminate for any reason in all matters relating to the administration and supervision of the public schools and all policies related thereto.

Accordingly, plaintiffs' Title VI claim is **DISMISSED** with leave to re-plead, the time to do so expiring 30 days after the date of this order. Defendants may renew this motion as to that claim if such pleading has been filed. If no amended pleading is received by that time, the claim shall be deemed abandoned and dismissed with prejudice. Plaintiff official capacity claims against the individually named defendants are **DISMISSED**, and Defendants motion for summary judgment as to the § 1983 and § 1981 claims is **GRANTED** and the complaint is dismissed as to those two claims.

**IT IS SO ORDERED.**